STATE EX REL. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Respondent, vs. WEIHER, City Clerk, and others, Appellants.

*May 10—June 6, 1922.*

*Taxation: Assessment of office building: Variance between intrinsic value and sale value: Aids to assessor: Basic price per cubic foot: When use is allowable.*

1. Under sec. 70.32, Stats. 1921, requiring real property to be assessed at the full value which could ordinarily be obtained therefor at private sale, a large office building having an intrinsic value in excess of the sum it would sell for, because built for a specific purpose, can only be valued at its sale value; and cost, depreciation, cost of reproduction, location, etc., can be considered only in arriving at the market value.

2. In valuing large business buildings for taxation it was not improper for the assessor to use a basic price per cubic foot found by experience to roughly represent the value of the average large office building, where this was merely a starting point, to which was added or deducted the proper amount, depending on the character of the construction of the building, the amount of depreciation, obsolescence, location, and other elements that would affect the sale value.

CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

*Certiorari* to review the assessed valuation of the building of the relator. The circuit court changed the valuation from $2,750,000 to $1,350,000. Construction of the building was begun in 1911, and it was completed in 1915 at a cost of $3,156,228.03. The present reproduction cost would be about $4,000,000. The ground on which the building is located was assessed at $350,000, and that assessment is not challenged.

For the appellants there was a brief by *John M. Niven,* city attorney, and *Walter J. Mattison,* assistant city attorney, and oral argument by *Mr. Mattison.*

For the respondent there was a brief by *Geo. Lines* and *Sam T. Swansen,* both of Milwaukee, and oral argument by *Mr. Swansen.*

VINJE, C. J. In the brief of the appellant we find this statement:

"No question is raised as to the power of the court to reduce the assessment, for the reason that all parties are agreed that the question at issue is purely one of law. If the rule for assessing property sought by petitioner is sustained, then the valuation fixed by the circuit court is undoubtedly the proper figure. On the other hand, if the rule of valuation adopted by the assessor and the board of review is found by the court to be in full compliance with the statute, then the assessment must remain at the figure adopted by the board of review."

The respondent concurs in this view, and so does the court. The legal question for determination then is, Did the court adopt the statutory method of assessment or did the assessor adopt it? The statute provides (sec. 70.32):

"Real property shall be valued by the assessor from actual view or ·from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall ·consider, as to each piece, its advantage or disadvantage of location," etc.

It is not possible to state with absolute accuracy the precise rule adopted by the assessor. He took as the basis for his computation a valuation of fifty-three cents per cubic foot, that value having been found by experience to roughly represent the value of the average large office building in Milwaukee. Taking such figure as a basis he took into consideration the location of the building; the cost of construction; the cost of reproduction; the purpose for which the building was used, and all other elements which naturally reflected the value either upward or downward. So far his method does not run counter to the statute. But when he came to fix the assessed value upon the basis named he fixed it at a sum which, as we understand it, would fairly reflect the intrinsic worth of the building based upon the elements mentioned, and not upon a price which in his judgment could be obtained for the building if offered for sale. The claim is that the building has an intrinsic worth in excess of the sum it would sell for because it was built for a specific purpose and if sold would have to be sold for a use or purpose for which it was not built, hence its selling price would not reflect its actual value based upon its reasonable intrinsic worth. This is true; and herein would lie the difficulty of solving the question of the proper assessed value but for the statutory rule and the construction given it by this court, if that can be said to be construction which but repeats the language of the statute.

State ex rel. Northwestern M. L. Ins. Co. v. Weiher, 177 Wis. 445.

The statutory rule of assessment of real estate is to assess it at its sale value and not at its intrinsic value if that differs from the sale value.    As was said in *State ex rel. Oshkosh Country Club v. Petrick,* 172 Wis. 82, 84, 178 N. W. 251, the statute "requires.that property shall be assessed with reference to purposes for which it may be sold rather than the purposes to which it presently may be devoted."    That the case of *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429, was considered to be in harmony with this view is evidenced by this statement of the court in *State ex rel. Oshkosh Country Club v. Petrick,* 172 Wis. 82, 84, 178 N. W. 251:

"In the *Gisholt Case* the property was devoted to· manufacturing purposes and the company was a going concern with an established business.    That it could be sold as such at private sale was not questioned.    But because sales of such property were few and far between ('as testified to by the president of the company), it was ruled that the original cost of the property less depreciation might be considered in fixing the value thereof for taxation purposes."

In other words, the selling value was made the test.    To arrive at that test, for reasons stated, the factor of cost less depreciation could be taken into consideration.    In the case at bar the factors of cost, depreciation, cost of reproduction, location, etc., are competent factors to· arrive at the *market price* of the building, but not to arrive at what it may be considered intrinsically worth to the owner or to a supposed purchaser that does not in reality exist.    The argument that the owner may be considered as standing in the place of a purchaser who, if desiring to buy, would pay its reasonable intrinsic worth, forgets the statutory test, namely, What will it bring if the owner is the seller and somebody else is the buyer?    The statute does not contemplate that the owner shall be both seller· and buyer. No safe test could be arrived at upon such a basis.    It would consist in only the judgment of the assessor unchecked by external actual facts as to· sales or market value.

State ex rel. Northwestern M. L. Ins. Co. v. Weiher, 177 Wis. 445.

The argument is also made that an owner is not supposed to build to lose, hence he would pay its cost or at least its reasonable intrinsic worth.    This may be true enough generally speaking, but we do know that many persons do build in such a way, owing to size of building, mode of construction, location, or all three, that a loss does result even in normal times.    It is also urged that the building under an assessment of market value only is considered for a purpose .for which it was not intended and is therefore not assessed at its full value based upon the purpose for which it was constructed.    This also is true; but since the statute fixes the test, and has maintained it as it is for half a century or more, we must assume the legislature is well satisfied with it.    At any rate the courts cannot change it.    That it is the best test that can possibly be devised we have no doubt. As to the great mass of taxable real estate it furnishes the only fair and safe touchstone—one that extrinsic facts— actual sales of like or similar property—can conclusively establish; thus in as large a measure as possible eliminating the mere judgment of the assessor, and enabling an owner or the assessor, as the case may be, to prove the valuation by facts which he has had no part in establishing or shaping and which do not lie solely in any man's judgment.    It is true that in cases such as this too low a valuation seems at first blush to be established for taxation purposes.    But it must be borne in mind that the state asks a tax only upon the business value of the property of its citizens, if that term may be used, because such value is readily ascertainable for reasons already stated, and that buildings built in such a manner that they cannot be resold for their fair intrinsic worth or near their actual cost will not often be constructed.    In this case we have a fine, substantial, artistic building, gracing half a block in the city of Milwaukee, built to meet the peculiar needs of its owner, and not well adapted for other uses.    The state says, Tax it at its sale value.    It is not ultimately a question of cost, of cost of

State ex rel. Northwestern M. L. Ins. Co. v. Weiher, 177 Wis. 445.

reproduction, of revenue derived from its use, of location, but of all these and of all other elements that go to determine sale value. The assessor used these elements to determine the real fair intrinsic worth of the building to one who might need it just as it is. The court used these elements in arriving at its sale value, taking into consideration the actual situation as it existed in Milwaukee at the time. The latter is the statutory rule and governs.

The relator has criticised quite severely the use of the basic fifty-three cents per cubic foot for large business buildings in Milwaukee. As we understand it, the fifty-three cents per cubic foot was a starting point merely, to which was added or deducted the proper amount, depending upon the character of the construction of the building, the amount of depreciation, obsolescence, the location, and many other elements that would affect the sale value of the building. So used, the basic fifty-three cents per cubic foot was not an arbitrary assessment, but it was a very useful and fair method of insuring such uniformity of valuation as the circumstances would permit.

A few cases from other jurisdictions have been cited to us on both sides, but we have not adverted to them because our own statutory rule controls as to what rule of assessment of real estate shall obtain in this state.

*By the Court.*—Judgment affirmed.

CROWNHART, J. (*dissenting*). The *Northwestern Mutual Life Insurance Company's* building in Milwaukee was valued by the assessor for the year 1921 at $2,750,000. This valuation was contested by the company before the board of review, and such valuation was sustained. The record was taken on *certiorari* to the circuit court, EDWARD T. FAIRCHILD, Judge, and the circuit court reduced the assessment to $1,700,000.

The building was commenced in 1911 and completed in 1915 at a construction cost of $3,156,228. It was specially

designed and built to meet the requirements of the insurance company. There is nothing in the record to indicate that the building is not in every way satisfactory for the purposes for which it was built.

The city of Milwaukee has a tax commissioner and an engineering department, experts in taxation matters.

The question presented for decision in this case must be approached in the light of well-settled principles of law governing the jurisdiction of courts in reviewing the findings of boards of review on *certiorari*. The duties of boards of review are *quasi*-judicial and courts have no jurisdiction to disturb their findings or determinations except where they act in bad faith or exceed their jurisdiction. *Brown v. Oneida Co.* 103 Wis. 149, 79 N. W. 216. Judicial review of the action of boards of review on *certiorari* extends only to jurisdictional errors. *State ex rel. Miller v. Thompson,* 151 Wis. 184, 138 N. W. 628; *State ex rel. M. A. Hanna D. Co. v. Willcuts,* 143 Wis. 449, 128 N. W. 97. If a board of review does not act arbitrarily or dishonestly and the evidence presented before it is sufficient to furnish any substantial basis for the valuation found by the board, its decision will not be disturbed. *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 152 N. W. 450.

Under the limitations fixed by the above authorities, the controlling questions in the instant case are:

(1) Did the board of review act arbitrarily or dishonestly in assessing the relator's property?

(2) Was there any evidence presented before the board of review which would reasonably sustain the assessment it made?

The record is entirely barren of any evidence indicating that the board of review acted arbitrarily or dishonestly. On the contrary, there is ample evidence that the district assessor who appraised the property, and the members of the committee who co-operated with him, carefully examined it and endeavored to fix its value in the same manner

and on the same basis as other property of like character throughout the city. The unit value used was the same as that applied to other office buildings, except as this assessment was reduced to allow for a difference in location. The effect of this course was to equalize the assessment of the relator's property with that of other office buildings in the city, and there is no evidence to show that this class of property was assessed on any different or higher basis than the general mass of property in the city. The question of whether either the assessor or the board of review acted arbitrarily or dishonestly may therefore be dismissed.

The relator's chief complaint is that the rule adopted for determining the value of its building was that of original cost and not what it would ordinarily bring at private sale, but the plain inference from the record is that the element of cost was used in connection with other factors for the purpose of arriving at selling value. The building in question was located and constructed to meet the special needs of relator's business and has been constantly used by it since erected. For this reason the relator has never offered to sell the property and has received no offer for it. In other words, there was no established market value for the property. Under these circumstances both the assessor and board of review were compelled to resort to other elements, and in doing so the original cost of construction and an estimate of the cost of reproduction were naturally sought, but neither of them was used exclusively in fixing the value. On the contrary, the assessment was materially less than the original cost and from twenty-five per cent. to forty per cent. below the estimated cost of reproduction in present condition. Moreover, the fifty-three cents per cubic foot unit value used was not derived from the cost of constructing this particular building, but is the average unit cost for office buildings generally in the city of Milwaukee. As most of these buildings were of less expensive type than relator's building, it cannot complain of the unit price used.

State ex rel. Northwestern M. L. Ins. Co. v. Weiher, 177 Wis. 445.

In the absence of an established market value, original and reproduction cost are proper elements to be considered, especially in the case of a building recently constructed, in good condition and in present use, for the purpose for which it was built. Cost is recognized as an important factor in valuation by all authorities on the subject and is not without sanction in law. "Cost of construction and acquisition, though not an incontestable evidence of exchangeable value, is nevertheless almost always an important particular in the mass of circumstances laying the basis of a rational judgment touching the value of anything as an article of sale." 1 Cooley, Taxation, 756; *Sloan v. Baird,* 162 N. Y. 327, 56 N. E. 752; *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429.

Moreover, the assessment in the instant case was not determined on the basis of cost exclusively, but location and other conditions were taken into account. The fact that the final valuation arrived at is substantially less than either original cost or replacement cost in present condition sufficiently shows that other factors were considered. I conclude from the foregoing that the evidence produced before the board of review in support of the assessment made was amply sufficient to sustain it.

Evidence was offered by the relator tending to show that the assessment was excessive, couched in the statutory language of sec. 70.32, prescribing the basis of valuation for assessment purposes. But when the witnesses were requested to explain how they arrived at the values to which they testified, it developed that their judgments were based upon what the building in its present form would yield if the inclosed office space were rented on an estimated square-foot basis. This method of valuation contemplates a use of the building in its present condition, exclusive of corridor and vault space, for ordinary office purposes, and excludes the possibility of sale or rearrangement to increase the earning capacity. It ignores the monumental character of

the building altogether, makes no allowances for the spacious halls and corridors, the superior quality of material used in construction, or the luxurious appointments. The very construction of this building within ten years past and of similar buildings elsewhere throughout the country implies a demand therefor. It is a matter of common knowledge that many trust and insurance companies, railroad and industrial concerns build and occupy structures of this character. It is not unreasonable to assume that buildings of a type so commonly used would be salable in the market at some reasonable ratio to replacement cost.

The basis of valuation presented by the relator is that of capitalization of net earnings. While net earnings constitute a very important element of value, it cannot safely be used as the sole basis. It does not apply at all to many classes of property which are constantly bought and sold, and bulk large on assessment rolls. Take, for example, the whole class of luxurious residences, high-grade automobiles, expensive pleasure boats, statuary, paintings, and jewelry, which produce no net income and therefore cannot be valued on this basis. A magnificent building has some of the same elements as these specimens of art which may or may not be reflected in its earnings. Indeed, it is doubtful whether the method of valuation suggested by the relator is as well calculated to secure the real value of the property in question as the method adopted by the assessors and board of review. However that may be, the evidence presented before the board of review was sufficient to sustain the assessment as made, and it was error for the trial court to set it aside.

The insurance company, through its board of directors, men of excellent judgment, conservative in making investments, used $3,156,228, trust funds of their policy-holders, in erecting a building necessary and useful for its purposes. To say that this property, almost immediately after being built, is worth in the market but little over one half of its cost, is to impeach the judgment and good sense of the

officers of this company. I do not attribute to these men any lack of judgment and acumen in the management of the trust funds of the company.

The truth is, that because of the increased cost of building materials and labor the building is presently worth much more than its cost. What can be obtained for the building at private sale it is impossible to say with certainty until the building is put upon the market and offered for sale. What can ordinarily be obtained for the building at private sale assumes a person desiring to sell this kind of a building and a purchaser desiring to buy. In these days of great trust companies, insurance companies, banks, and other large business enterprises, buildings of this character are not monuments of folly but are investments of worth.

I think the judgment of the circuit court should be reversed, and the assessment made by the board of review should stand.