Buildings Development Company and another, Appellants, vs. City of Milwaukee, Respondent.

*May 27—June 21, 1937.*

For the appellants there was a brief by ·B. F. *Saltzstein,* and oral argument by *Mr. Saltzstein* and *Mr. Martin Gedlen,* both of Milwaukee.

*John J. Dolan* of Milwaukee, special counsel, for the respondent.

FOWLER, J.   The cases were submitted on the evidence presented to the board of review.   The rights claimed by the

appellants rest wholly on the proposition that the evidence before the board establishes that the assessments involved were excessive. The determinations of the board are *prima facie* correct. Sec. 70.47 (7), Stats. This is also true of the assessor's valuation. "If there is credible evidence before the board that may in any reasonable view support the assessor's valuation, that valuation must be upheld by the board." *State ex rel. North Shore Development Co. v. Axtell,* 216 Wis. 153, 157, 256 N. W. 622.

The testimony of the appellants which they contend requires reversal of the judgments and their claims as to its effect are summarized by them in their brief as follows:

"The testimony given by the plaintiffs and appellants consisted in the main of expert testimony that the buildings came within the class of investment properties and that the proper manner of determining their value was by what is called the income method of valuation and that the value of such properties is the present worth of their earning expectancy calculated at an interest rate that reflects the risks involved in the particular investment; that there are many factors which affect the future earning power of the properties; that future earning power alone is what influences buyers in the open market and that reproduction or original costs minus depreciation mean very little to buyers of this type of investment properties.

"The conclusion arrived at by appellants' witnesses was that the future earning expectancy of these investment properties would not justify the market value as found by the assessor and that no investor would be justified in offering more than one-half the assessed valuation for the properties."

The appellants' claim may therefore be stated as that the assessment of income-producing property must rest wholly on its prospective income. This contention was made and rejected in the *Axtell Case, supra.* The contention that income alone controls sales price was also rejected in *Wahl v. H. W. & S. M. Tullgren, Inc.,* 222 Wis. 306, 310, 267 N. W. 278. Elements besides income proper to consider in assess-

ing property are stated in the *Axtell Case* and others therein cited as "cost, depreciation, replacement value, earnings, industrial conditions," page 155, and "location of the property relative to the business section of the city," page 157. Insurance carried and statements of owners in a prospectus issued to induce sale of bonds issued against the property have also been held proper subjects of consideration. *State ex rel. Miller v. Thompson,* 151 Wis. 184, 138 N. W. 628; *State ex rel. Flambeau Paper Co. v. Windus,* 208 Wis. 583, 243 N. W. 216. These elements as well as income were all considered by the assessors of the properties and by the board of review.

The statement of the evidence before the board of review occupies nearly five hundred pages of the printed case and some one thousand eight hundred pages of the record. It is manifestly not possible to make any detailed statement of it within proper limits of an opinion, and we do not feel that any useful purpose would be served by an extended discussion of it. The board of review had the testimony of the assessors of the properties who are men of experience as assessors of property in the principal business districts of the city. They also had in support of the assessments the testimony of Messrs. Grueninger and Saudek, realtors and appraisers of experience of property in the business district. The plaintiffs produced Messrs. Babcock of Chicago, Schwerin of Chicago, president of the corporation owning the buildings involved, Straus, a realtor of Milwaukee, of experience in handling property in the business district, and Harvey, president and general manager of the Plankinton Building Properties, Inc., who was interested in procuring a reduction of the assessment of the properties of this corporation. The opinion of these witnesses as to value of the properties involved varies widely. Omitting the testimony of the assessors and witnesses not mentioned who testified to reproduction cost, and considering only the testimony of the witnesses for the plaintiffs above

named, and that of the two local realtors and appraisers produced by the defendant, we cannot say that the board of review or the circuit court was not justified in sustaining the assessments here involved. There is no dispute as to the correct basis of an assessment of real estate. Sec. 70.32 (1), Stats., fixes that. It "shall be valued by the assessor from actual view or from the best information that the assessor can practically obtain, at the full value which could ordinarily be obtained therefor at private sale." We do not find in the printed case any opinion by Mr. Straus of the sale value of the properties involved. His testimony is to the general effect that income is what buyers of like properties base the purchase price upon, and as to present and prospective conditions affecting income. Mr. Babcock's opinion, based entirely on consideration of income, is that it is one half of the assessed value of the properties. Mr. Schwerin's opinion, as definitely as we can determine it, was that the Bankers Building could not be sold for twelve times its net 1933 income, about $1,296,500. His testimony is mainly to rentals, income, and business conditions present and prospective. He also testified that the building carries insurance to the amount of $650,000. Mr. Schwerin is also president of the Buildings Development Company, which owns a leasehold interest in the land on which the Empire Building is located and is the owner of the building. He gives $814,000 as the "maximum value you can justify on that [Empire] property on May 1, 1933." Insurance is carried on the building to the amount of $800,000. We do not find in the case any definite opinion by Mr. Harvey of the sale value of the properties involved. As we understand the effect of his testimony bearing upon such value he would fix it at about eleven times income. This would give a valuation less than that given by Mr. Schwerin. The testimony of all the witnesses of the plaintiffs goes only to income and sale value based solely on income reasonably to be expected.

On the other hand, Mr. Grueninger, giving such effect to income as he considered should be given, gave as his opinion of the proper assessment of the Empire Building property: Land, $1,260,000; building, $900,000; total, $2,160,000. Mr. Saudek's figures were: Land, $1,182,000; building, $905,000; total, $2,087,350. On income alone, based on a four-year and a five-year period, these witnesses testified that in their opinion their valuations were justified. Taking eight per cent instead of eight and a half as claimed by Mr. Schwerin as a proper basis of capitalization of income-producing property and computing value on that basis, using the five-year period, gives a valuation of $2,047,500 for the Empire Building property. The four-year period, on the same basis, would give a valuation of $1,712,500. The income of the Bankers Building property was $108,039. Using eight per cent as a basis of valuation, the valuation would be $1,350,400. When the other items proper for consideration are considered in connection with income, we cannot say that the conclusions of the assessors and the board of review are not sufficiently sustained, although we might, were we triers of fact, consider that not enough weight was given to income in arriving at the valuation of the Empire Building, but being only reviewers of the findings of the court below and the board of review, we cannot overturn them.

The appellants claim that the assessors and the board of review gave undue weight to the fact that bonds against the properties involved had been issued to amounts in excess of the assessments, and to the sale price in 1927 of the land on which the Empire Building is located. It is true that 1927 is a long while back, but there have been no sales of property since, and no sales of any property similarly located for several years back. The fee of the Empire Building property was subject to a first mortgage of $1,000,000, and a second mortgage of $550,000. A ninety-nine-year leasehold of the property has against it a mortgage for $1,450,000 and a

second mortgage of $375,000. Bonds have thus been issued against the property to a total of $3,375,000. It is of some bearing that Mr. Babcock, the witness upon whom appellants base their main reliance, made an appraisal of the leasehold, exclusive of the fee, at $2,302,000, as of December 31, 1927. The event has proved the bonding of the property greatly excessive. But it is possible that Mr. Babcock's judgment is now no better than it was in 1927. The same may be suggested as to Mr. Schwerin, who was party to the bonding of the property. So the board of review and the court may have thought, and thus have considered the opinions of the city's witnesses above named more trustworthy than that of these gentlemen. Not only present income but future income reasonably to be anticipated must be considered in properly evaluating income as an item of consideration in determining sale value. We are, of course, unable to say what weight the board of review or the court gave to the bonding of the properties in passing upon the assessor's valuations.

The appellants criticize what they term "rule of thumb" methods of the assessors in computing reproduction cost of buildings by taking cubical contents as the basis of computation. This method was objected to in *State ex rel. Northwestern M. L. Ins. Co. v. Weiher*, 177 Wis. 445, 188 N. W. 598, and held not improper. Besides, there was testimony of competent engineers on this point that sustains the estimates of the assessors. Like objection, on like ground, was made to the assessors using percentages of increase in valuation of land based upon location in respect to street corners and alleys. The assessors claim to have based their practice in this respect upon study of sales, long-time leases, and issues of bonds against leaseholds and the like made in the past. There is no evidence that their conclusions are not supported by the facts, but the practice is criticized as having no bearing whatever on the sale value of income-producing property with buildings thereon adequate for the land. But sec. 70.32,

Stats., requires assessing land and improvements separately. Some method of valuing the land independent of the buildings must be used if the statute be followed. The appellants' witnesses do not suggest what would be a proper separate valuation of the land. They insist that land and buildings must be taken together in determining valuation and nothing but income be taken as the basis of computation. The position of appellants is in effect that of their witnesses that both the statute next above cited and the items for consideration heretofore held proper by the court are wrong, and they therefore ignore them. It may be that application of the statute to such properties as are involved is impractical, but statutory requirement must be met as best it can as long as it remains in the statutes. It may be also that application by assessing authorities of former opinions of the court as to matters proper to consider in assessing such properties result, in individual cases, through improper evaluation of individual matters, in imposing upon property a burden that is inconsistent with adequate income from it under the immediate market conditions and vacancies resulting through overbuilding and lessened rental demands owing to the current business depression. But property owners must, in all but plain cases of breach of statutory duty, rely on just and fair treatment by assessing authorities, rather than the courts, for avoidance of intolerable assessments. We perceive nothing in the record before us to warrant the court in interfering with the instant assessments.

*By the Court.*—The judgments of the circuit court are affirmed.