STATE EX REL. HENNESSEY, Appellant, vs. CITY OF MIL-
WAUKEE and another, Respondents.*

*November 10—December 8, 1942.*

---

\* Motion for rehearing denied, with $25 costs, on February 9, 1943.

For the appellant there were briefs by *Vincent D. Hennessey in pro. per.* and oral argument by *Vincent D. Hennessey* and *Vincent D. Hennessey, Jr.,* both of Milwaukee.

For the respondents there was a brief by *Walter J. Mattison,* city attorney, and *John J. Dolan* and *John A. Decker,* assistant city attorneys, and oral argument by *Mr. Dolan.*

FOWLER, J. A writ of *certiorari* was issued out of the circuit court for Milwaukee county to review an assessment of real estate confirmed by the local board of review. The court granted a motion of the defendants to quash the writ and judgment was entered dismissing the action.

The statute governing the assessment of real estate, sec. 70.32 (1), Stats., and in Revised Statutes of 1878, sec. 1052, reads as follows:

Sec. 70.32 (1), Stats. "Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. . . ."

The statute governing the action of the board of review reads:

Sec. 70.47 (1), Stats. ". . . The board shall, under their official oaths, carefully review and examine . . . all valuations of real and personal property, . . . and if it [shall] appear that any property has been valued by the assessor too high or too low, they shall increase or lessen the same to the true valuation according to the rules for valuing property prescribed in this chapter."

The parties do not differ as to the rule of law applicable under these statutes. They agree that real estate must be

assessed at its fair market value, and that the market value of real estate is what property will sell for upon negotiations resulting in sale between an owner willing but not obliged to sell and a willing buyer not obliged to buy. *Estate of Ryerson,* 239 Wis. 120, 125, 300 N. W. 782. They also agree that the assessor's valuation must be taken as presumptively correct in proceedings attacking the assessment, but that this presumption must give way to undisputed competent evidence establishing a lower value. At least if they do not so agree they should, for it is the established law. See *Estate of Ryerson, supra,* pp. 138, 139; *State ex rel. Collins v. Brown,* 225 Wis. 593, 595, 275 N. W. 455. The appellant claims that application of these rules requires reversal of the court's judgment.

The instant property is a lot with a residence thereon situated in a high-class residential section of the city of Milwaukee. The 1941 assessment is involved. It was then assessed at $16,500, $6,500 for the land and $10,000 for the improvements. The relator purchased it in September, 1940, for $12,500. He has since made some improvements, which he concedes have increased the sale value by $500 or $600. He contends that these facts supplemented with facts as to the sale price of similar property in the near vicinity and other material facts presented before the board of review, all undisputed, required a reduction of the assessment to $12,500, plus such amount as the sale value was increased by the improvements.

It is said in the *Ryerson Case, supra,* p. 137, that "it is our observation in many of the cases that have come before us that trial courts are inclined to give altogether too little weight to the price actually paid for property upon a fair open market." This is as applicable to assessors and boards of review as to courts. It is true, a sale of the instant property does not establish market value unless the evidence of it "is accompanied by a showing that the sale was made under such normal and usual circumstances as to lead to the conclusion

that the price paid was that which ordinarily could be obtained at private sale." *State ex rel. Collins v. Brown, supra,* p. 595. It follows as corollary to the above that if the evidence of the instant sale price is so accompanied, then that sale price must be taken as the "fair market value."

The evidence clearly shows that the sale of 1940, which we shall refer to as "the instant" sale, was consummated upon negotiations between a seller and a buyer under conditions as above stated. It was in every respect an ordinary sale. There was evidence of sales of five similar properties in the neighborhood at like relative prices in 1940. The parties to these sales were "willing" and "under no obligation to sell" or "buy." At the time of his purchase the relator "shopped" and had other similar properties offered him at similar relative prices. A like property, which he preferred to the instant property he offered $12,000 for and his offer was refused only because a few days prior to his making the offer the property had actually been sold for $11,800. Four other similar properties in the neighborhood were offered and held for sale in 1940 at like or less relative prices. The instant property had been held and listed for sale by the seller for three years without any offers better than the relator's being made. The record of the supervisor of assessments of Milwaukee shows that for the whole city the assessment value is 92.76 per cent of the sale value and for the subdivision in which the instant property is located the assessment value is 114.19 per cent of the sale value.

Two witnesses, the assessor and the chairman of a committee of the board of assessors of the city, testified for the city before the board of review. The assessor, Mr. Wangerin, testified specifically as to how he arrived at the instant assessment. He valued the lot at $70 a front foot and added $200 because it was a corner lot which gave a value of $6,500 for the lot. The $70 is the unit assessment of the front-foot value of property in the vicinity on the street on which the instant property fronts. There is no evidence that $70 is

the sale value, and there is undisputed evidence that a lot, one block away, on Lake drive, the finest street in the city, is posted for sale at $50 a front foot. He fixed the value of the house by estimating reconstruction cost at $16,500 and some "extras" at $1,000, making $17,500. The house being twenty-five years old, he deducted for depreciation 1½ per cent per year, which made 37½ per cent and added 2½ per cent to make it 40 per cent. He took 60 per cent of $17,500 and added $500 for the improvements which made $11,000 and then knocked off $1,000 making the assessment $10,000 for the building. He gave no consideration to the sale price of the instant property or to that of other properties in the neighborhood. He stated in answer to a leading question that in his judgment the assessment expressed the fair market value, but manifestly this judgment was merely his opinion of what the property ought to sell for. Mr. Bouche, the other witness referred to, who "investigated" the relator's complaint for the board of review, was equally specific as to why he considered the assessment correct. He estimated that the house, without the garage had "a useful value" of $16,500, the garage had a reconstruction value of $1,000. "We [he] depreciated the building twenty-five years at 1½ per cent, which gave 62½ per cent on it, or $10,400 for the building or $600 for the garage. That made $11,000. Then we [he] deducted 750 square feet of no basement in the building at seventy cents a square foot; that is $500. That gave us $10,500. And the assessment being $10,000 was close enough to that, and we figured that it would be a fair figure."

It is to be considered in connection with this testimony that Bouche, in the proceedings before the board of review, testified "This district, as the assessor has testified, is in the process of being completely reassessed, and it so happens that only a portion of the district could be completely reassessed the first year by the new assessor, and also the buildings that there were definite complaints on, and I feel that that property on Summit avenue is undoubtedly going to be lowered in the future to

very close to that asking price." This was said in connection with a residence "just to the west" of the instant property held for sale at $12,000, and assessed at $16,500 the same as the instant property. The instant property was manifestly assessed on the basis stated by the two witnesses for the city. It is said in the *Ryerson Case, supra,* p. 127 : "Where the clear market value is not established by a sale or sales, then all the facts collectively which have a bearing upon such market value are to be considered in determining it." Such facts or estimates as were here considered by the assessor and the board are permitted merely as tending to show what the fair market value is. When that value is established by the sale of the instant and like property there is no occasion to resort to reproduction value less depreciation as was here done to determine that value. It is considered that the evidence of the sale of the instant property, the sales of similar property in the vicinity, and of the offers of sale of like property under the evidence as to condition of the parties to the sales and offers, establish that $12,500 plus the sales value incident to the improvements is and fixes the fair market value of the property in suit at the time of the assessment. If the proofs of fair market value here made do not require the setting aside of the instant assessment it seems that an assessor's assessment never can be set aside, and assessors may entirely ignore or disregard the statute fixing their basis of assessments. That basis and the duty of assessors and courts to adhere to it have been recently declared in the *Ryerson* and *Brown Cases, supra,* and numerous cases fixing that basis are cited and reviewed therein. We see no occasion to duplicate those citations or reiterate the reasons there given for the rulings there made.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment vacating the assessment with costs to the relator.

FRITZ, J., took no part.