State ex rel. Kenosha Office Building Company, Respondent, vs. Herrmann, Acting City Clerk, Appellant.*

*March 14—April 14, 1944.*

* Motion for rehearing denied, with $25 costs, on June 6, 1944.

254

*Robert V. Baker, Jr.,* of Kenosha, for the appellant.
*Frank J. Shannon* of Kenosha and *J. E. Porter* of Milwaukee, for the respondent.

FOWLER, J.   As appears from the foregoing statement, the appeal is from a judgment on *certiorari* to review a decision of the board of review of Kenosha, hereinafter referred to as

the "Board," confirming the assessment of respondent's real estate. The trial court by its judgment reduced the assessment from $223,000 to $150,000. The reduction was in the assessed value of the improvements, the part attributable to the land being left at $32,000. The respondent taxpayer asks that the assessment made by the lower court be affirmed. The appellant city seems to acquiesce in the claim of the respondent that this court may affirm the lower court's assessment if it holds that that court properly determined that the assessment could not exceed $150,000.

It is first to be pointed out that it is no function of the trial court on *certiorari* to make an assessment of property, or to order an assessment to be entered on the assessment or tax roll at any fixed sum. The sole function of the trial court is to set aside the assessment if it finds upon the undisputed evidence before the board that it has not been fixed upon the statutory basis. Sec. 70.74, Stats., requires that the property then be reassessed. Nor is it the function of this court to make an assessment or direct at what sum an assessment shall be entered on the tax or assessment rolls. The respondent cites *State ex rel. Northwestern M. L. Ins. Co. v. Weiher,* 177 Wis. 445, 188 N. W. 598, as authority for the latter, but the record in that case, as shown by the briefs and printed case on file therein, stipulated that this court fix the amount of the assessment and this court yielded to the desire of the parties so expressed and at least suggested the proper amount and the parties acquiesced in accepting the amount suggested as the amount at which the property should be assessed.

The usual course in *certiorari* to review the action of a board of review has been for the trial court to determine whether the undisputed evidence submitted by the taxpayer was such as to show the assessment objected to was not based on sale value as fixed by the statute. If so the assessment has been set aside. Where the evidence so produced was contro-

verted,—if in any reasonable view the evidence as a whole would support the assessment,—the assessment has been upheld. Also, if the record before the court showed that the assessor or the board excluded from consideration evidence entitled to consideration or if the assessor based his valuation on improper considerations or went upon a false assumption or theory in determining the amount, or gave to facts considered unwarranted effect or drew from them unwarranted conclusions the assessment has been set aside. The recent cases of *Estate of Ryerson*, 239 Wis. 120, 300 N. W. 782, and *State ex rel. Hennessey v. Milwaukee*, 241 Wis. 548, 6 N. W. (2d) 718, illustrate what will justify setting aside an assessment, although they do not purport to include everything that will justify such course. Arbitrary conduct of the board, —a refusal to accede to the taxpayer right to contest an assessment; treating him as an interloper, improperly taking their time and troubling them by bringing his claim of an excessive assessment before them; predetermining from whatever cause or consideration to uphold the assessment before the taxpayer has presented his evidence or his reasons in support of his claim,—are sufficient, when clearly appearing, to justify the trial court in vacating the assessment.

The respondent claims that the trial court properly refused to confirm the assessment because of the board's improper conduct as next above outlined. The trial judge in a written decision based his decision on his conclusion that the conduct of the board was arbitrary. He considered that the board, as they did in 1942, on the same evidence "again took the position at the outset and before the testimony was introduced that the application of the property owner for a review was an imposition upon the board." The record of the instant proceeding before the board shows that the board from the commencement of the proceeding to its close were openly and intensely hostile to the taxpayer and to his application for a reduced

assessment. The record is too voluminous to set out in detail. As showing this attitude and the refusal to consider or evaluate properly the effect of items of material evidence we submit the following statements of members of the board made in the course of the proceeding before them:

"The percentage of income [from the bank] of the entire building had ought not to have anything to do with it at all;" "if the building were . . . completely vacant . . . therefore there would be no value to the building and consequently no taxes." "That is also very interesting news to know that the officers of the office building were the same people who were officers of the bank. In other words, the officers of the bank were paying themselves a rental as officers of the bank building;" "is the price paid or the price asked for property by an owner necessarily the value of that property?" "Why cannot this building be sold at the amount of the assessment?" "I would like to make this speech. We have had three witnesses before us. . . . They base their appraisals on the income, present income and what they call market value. In other words an amount they have been offered and can receive for the building. . . . No opinions given here this evening were based on the basis of construction and real ability to appraise the building from any standpoint." Pending a motion to adjourn to a later date the following statements were made: It was then 12:27 a. m. "Any ordinary bookkeeper or clerical man could make the same guesses that have been made by these so-called qualified appraisers." "This cross-examination [by Mr. Shannon for the plaintiff], this is not the place for it. We know the detail and we heard them time and time again. We heard them last year and we hear them again this year, and next year again." "I would prefer to finish up tonight, but we were told this case would take about two hours. But of course we have all been misled;" [by another councilman]: "Misled or lied to." "Bob [Mr. Baker for city on cross-

examination] only took four minutes. Mr. Porter [for the property owners] only thirty odd minutes. Counsel for United States National Bank [no such party was connected with the hearing, referring to Mr. Shannon, who appeared for the taxpayer] four hours forty minutes." "I think he [president of taxpayer corporation] has been hobnobbing with the judge we had here last week." At the conclusion of this obviously unfair hearing one of the councilmen stated,— perhaps with unconscious humor,—"That is all. Just for the matter of the record, note that at 7:30, August the third, we started on this hearing. It is now 12:43 a. m. August the fourth. Just so the court will know there was plenty of time." [By another councilman] : "You want the court to know that we were interested in the case; that we were patient and listened to it." It also appears in the evidence that the assessor had a conversation with members of the board after conclusion of a session a short time previous to August 3d relative to the assessment of plaintiff's property which he had arrived at the previous day and reported it to Mr. Shannon, and told the board that plaintiff wanted to appear before the board.

The hearing at which the property owner's counsel was present and the testimony was taken was held on August 3, 1943. At a meeting on August 10th at which plaintiff's counsel or any one representing the plaintiff was not present, and at which the city councilmen, city manager, city clerk, city assessor, and city attorney were present, a motion was carried "that the assessor's report be accepted and be made a part of the minutes, in lieu of his testimony." At that meeting a motion was also carried "that the assessment as reported by the city assessor stand, and no reduction be made on this [plaintiff's] property." Attached to the minutes of this meeting is an unsigned typewritten document not verified by oath, of four and a half $8\frac{1}{2}$ by 13-inch pages, which is the "report of the assessor" referred to above. This document states that

at the previous meeting counsel for plaintiff ."brought out past assessments and past earnings of the property. That is immaterial to what the assessment should be in 1943." It states that "Mr. Ballantyne [manager of the property] said that in *his opinion* the property was worth $130,000, based on earning power, but understood the owners would take as low as $115,000. . . . He qualified as an appraiser but the only value he put on the property was what it was in his opinion." The values put on the property by other witnesses of the property owner are stated and stated as based on earnings, but with the statements are comments indicative of the assessor's notion that their opinions were not worthy of consideration because of their interest and inexperience in appraising property values. He misquotes testimony in certain respects. Says one witness indicated a possibility of "getting another bank here." The record of his testimony is rather to the impossibility. It goes to the failure of his efforts to get one. It says "not one witness [of plaintiff] produced any evidence to back up his stated value." The testimony of the only witness for the city besides the assessor whose valuation was based solely on his estimate of reproduction cost less depreciation, a contractor who bid for the construction of the building but did not get the contract, is detailed at considerable length, and was obviously considered by the assessor as entitled to greater weight than that of all the other witnesses.

We think the trial court was justified in his conclusion that the action of the board was arbitrary, that their conclusion to confirm the assessment was predetermined, and that the board failed to give candid and fair consideration to the plaintiff's testimony.

It also appears that there was no dispute as to the efforts and results of attempts to sell the property, that the board considered market value,—what the property would sell for,—as not determining the assessed value, and disregarded the testi-

mony of the plaintiff's witnesses in that regard and accepted the assessor's statement as to his basis of computing the value of the building which was to take his estimate of replacement value less depreciation and his estimate of valuation based on net income, add the two together and divide by two and take the quotient as the assessed value. He did not use a proper amount of taxes in computing net income, and by his own statement disregarded all else than this quotient in assessing "improvements," and thus evaded the statutory basis of assessment, which is sale price, which is "the sum which property would bring on a fair sale when sold by a willing seller not obliged to sell to a willing buyer not obliged to buy." *Ryerson Case, supra*, p. 125.

We trust that the feeling against the circuit court engendered during the present and preceding contest will not result in a succession of stalemates so that the power to reassess the property and relevy the 1943 tax will be lost under sec. 70.74, Stats.

*By the Court.*—The first paragraph of the judgment which vacates the assessment and adjudges it void is affirmed; the succeeding paragraphs of the judgment down to the last are stricken; the last paragraph of the judgment is affirmed; as so modified the judgment of the circuit court is affirmed. The respondent will recover costs.

BARLOW, J., took no part.

The following memorandum was filed June 6, 1944:

FOWLER, J. (*on motion for rehearing*). There is a motion for rehearing by the property owner asking the court to change its mandate to affirm the judgment of the court below. That judgment set aside an assessment on *certiorari* of proceedings before the board of review to reduce the assessment and fixed the amount of the assessment. The mo-

tion brings up for review our ruling that the circuit court on *certiorari* of such proceedings "cannot make an assessment of the property or order an assessment to be entered on the assessment or tax roll at any fixed sum. The sole function of the trial court is to set aside the assessment if [when] it finds upon the undisputed evidence before the board that the assessment has not been fixed upon the statutory basis." ·

Movant's counsel first urge that as the point was not raised in the court below this court could not consider it upon appeal. This contention is quite positively ruled against them in *Cappon v. O'Day,* 165 Wis. 486, 491, 162 N. W. 655. We see no reason to repeat or add to what is there said. The point here raised was distinctly suggested by members of the court on the oral argument, and it might more appropriately have been presented by supplemental brief than by motion for review if counsel intended to rely upon it. However we will here try to treat the point adequately.

Counsel base their contention on three decisions of this court: *Milwaukee Iron Co. v. Schubel,* 29 Wis. 444; *State ex rel. Northwestern M. L. Ins. Co. v. Weiher,* 177 Wis. 445, 188 N. W. 598; and *State ex rel. Oshkosh Country Club v. Petrick,* 172 Wis. 82, 178 N. W. 251.

The *Insurance Company Case, supra,* is referred to in the opinion hereinbefore filed. Instead of our saying in our opinion that it was stipulated in that case that "this court might fix the amount of the assessment" it would have been more exact to say, as appears from the quotation at the commencement of the opinion in that case, that it was agreed by the parties that if the rule for assessment of property contended for by the company was correct, the valuation fixed by the trial court was correct, and that if the rule of valuation adopted by the assessor and board of review was in accord

with the statute, then the assessment should remain as fixed by the board. A judgment of the circuit court that determined the amount of the assessment was affirmed.

In the *Petrick Case, supra,* the property was assessed by the assessor at $30,000. The board of review reduced the assessment to $27,500. The opinion in the case states that there was no evidence to sustain that valuation. The property owner had consented to an assessment of $25,000 and produced evidence of witnesses as to its valuation. Whether evidence was produced by the defendant does not appear from the opinion, but it appears from the case and briefs that the evidence produced by the property owner was uncontradicted. The court found as fact that the value of the property was $25,000 and entered judgment that "the assessment roll be amended" to conform to that finding. This court affirmed that judgment.

The affirmances of this court in two of the cases relied upon by the movant are sustainable on the theory that the evidence was not in dispute and definitely fixed the assessment of the property involved at the amount determined by the court; and that in the other, the *Petrick Case, supra,* is sustainable on the theory that the evidence was not in dispute and definitely established that no higher an assessment could be made than that fixed by the court and that amending the assessment to that amount therefore could not harm the defendant and did not harm the plaintiff because the plaintiff assented to it.

Much is said in the *Milwaukee Iron Co. Case, supra,* opinion that seems at first blush to support the judgment in the instant case. Such statements are supported in a general way by the New York decisions cited in their support, but examination of those cases indicates that in them there was no contradictory evidence and the evidence definitely fixed the valuation found by the court as according to the statutes on which the assessments involved were based. It is further to be noted that the

*Milwaukee Iron Co.* decision, in its concluding paragraph, page 453, of the opinion indicates that where the evidence before the board of review is in conflict the court cannot substitute its own valuation for that of the board of review. It definitely states that a distinction may well be made between cases where the evidence is not in conflict and where it is, and that in the former the court may amend the assessment while it may not in the latter. The instant case is in the latter class.

It is obvious that in cases where the evidence is conflicting a determination of valuation by the court that would settle the controversy as to the assessment for the year involved rather than leave it open for contest on reassessment is desirable if the court has power to make it. But if the court has not jurisdiction to determine the valuation in case of contradictory evidence, then the court cannot make the determination however desirable that may be.

Defendant's counsel cite several cases of this court to the effect that where the evidence before the board is conflicting the court's power is limited either to affirmance or reversal. *State ex rel. Milwaukee State R. Co. v. Anderson,* 90 Wis. 550, 568, 63 N. W. 746, definitely so states. Our statement, in the opinion filed, that "it is no function of the trial court on *certiorari* to make an assessment of property" is definitely so supported not only by that case but by *State ex rel. N. C. Foster Lumber Co. v. Williams,* 123 Wis. 61, 65, 100 N. W. 1048; *State ex rel. First & L. Nat. Bank v. Board of Review,* 237 Wis. 306, 296 N. W. 614. In the *Williams Case, supra,* attempt was made to get this court to "broaden out the use of the common-law writ of *certiorari*" to amend an assessment to accord with the court's view of the evidence, but the court declined to do so. See page 66 of the opinion. It is also there said that the court up to that time had never attempted to change the scope of the writ in such proceedings. Perhaps the court in so saying did not have in mind the *Milwaukee Iron*

*Co. Case, supra.* We may add that it has never yet, that we have discovered, attempted to broaden the writ except as it was done in the *State ex rel. Northwestern M. L. Ins. Co.* and *Petrick Cases, supra,* above considered. If the extension made in those two cases was proper we consider that it should not be carried further, and to extend it under the evidence of the instant case would so extend it.

*By the Court.*—The motion for rehearing is denied with $25 costs.