STATE EX REL. NEW LISBON STATE BANK, Respondent, vs.
CITY OF NEW LISBON and another, Appellants.*

*January 9—February 5, 1952.*

* Motion for rehearing denied, with $25 costs, on April 8, 1952.

For the appellants there was a brief by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and oral argument by *V. H. Breitenfield*.

For the respondent there was a brief by *Curran & Curran* of Mauston, and oral argument by *Charles P. Curran*.

FRITZ, C. J. The certiorari proceeding was commenced by the New Lisbon State Bank (hereinafter called the "bank") to review an assessment made for the purpose of taxation by the city of New Lisbon (hereinafter called the "city") of the land and building owned and used by the bank in operating its banking business in the city. The bank alleged that the city assessor assessed the bank's land at $2,640 and its building thereon at $29,930—total $32,570. The bank duly filed objections alleging that the assessments were in excess of the fair market value and contrary to law. Upon a hearing duly scheduled by the board of review, the bank's president, H. J. Mortensen, and its cashier, H. Gibson, testified under oath that the value of the bank's land and its building did not exceed $20,000, and the sale value thereof did not exceed $18,000; that the building was erected in 1915 at a total cost of $12,845, and no improvements were made; that no mercantile building in New Lisbon, regardless of character, construction, or size, was ever sold for more than $10,000, and that a bank building usually has a low sale value; that in previous years, the land and improvements had not been assessed for more than $12,070; and that the assessment of $29,930 was excessive and erroneous. It appears that in making the assessment the city assessor was assisted by and relied upon J. D. Semrad who in computing the value of buildings uses a formula based on the cubic space in the building and the cost per cubic foot. Semrad assessed the value of the bank's property on the basis of sixty-six cents per cubic foot as against twenty-nine cents and thirty-two cents per cubic foot in computing the

value of other mercantile buildings in the same business block and of like materials and costing no more at the time of construction or on a reconstruction basis.

The bank contends that the assessment on the bank building is unfair, discriminatory, excessive, and not in conformity with sec. 70.32, Stats.; that the assessor and his special assistant, Semrad, used an arbitrary formula in fixing the assessment, as evidenced by his statements before the board of review; that there was no evidence submitted to the board of review on which it could make an assessment in excess of $18,000; that in making the assessment the city authorities included safety-deposit boxes and other bank equipment of a personal nature contrary to sec. 70.40, Stats., and included air space above the roof of approximately 10,080 cubic feet, at the rate of sixty-six cents per cubic foot, amounting to $6,652. It appears that the hearing by the board of review was informal, neither party being represented by counsel; that some but not all of the testimony of the witnesses Mortensen, Gibson, and Semrad was taken down by a stenographer, and later transcribed. The bank claims the board of review disregarded testimony of Mortensen and Gibson and proceeded in an unlawful, arbitrary, and wrongful manner in assessing the land at $2,640 and the improvements at $25,360; that the action of the board was illegal and void because the undisputed testimony showed that the sale value of the improvements did not exceed $16,000 and there was no evidence on which a higher assessment could be fixed; that the assessment was not based on the fair market sale value as required by secs. 70.32 (1) and 70.40, Stats.; and that all proceedings by the city were without jurisdiction, erroneous, illegal, and of no effect for the following reasons: (a) The assessment is in excess of the full value which could ordinarily be obtained at private sale and is not supported by any evidence; (b) the valuation and assessment of petitioner's premises as compared with others is inequitable,

illegal, and void; (c) the board ignored the sworn testimony of petitioner and all of the evidence; and (d) the rule of assessments applied to property of the petitioner was a different and higher rate than the rule applied to other property of the same class in New Lisbon. The city clerk's minutes state that on September 20, 1950, the board of review "granted relief to the relator in the amount of $4,570 on the building, which made the total assessment $28,000."

In its memorandum decision the trial court stated:

"The record reveals that pursuant to sec. 70.055, statutes, a Mr. J. D. Semrad was employed by the city to assist in making the assessment. The assessment, in so far as the record reveals, was made by Mr. Semrad and he was the only one appearing in behalf of the validity of the assessment. . . . There is no dispute as to the assessment of land at $2,640. The building was determined by Mr. Semrad to contain 78,624 cubic feet at a unit replacement cost of sixty-six cents per cubic foot, amounting to $51,891 with 'extras' of $1,560 making his replacement or reproduction cost $53,451; he then determined the building to be in seventy per cent 'condition' making a 'sound value' of $37,415, to this he applied an eighty per cent 'resale factor' and thus arrived at the assessment value of $29,932. . . . It is apparent that Mr. Semrad placed considerable importance to the fact that the building in question was a bank. At the hearing he stated: 'I might say at the very beginning that this property, the bank building, cannot by any stretch of the imagination be compared with other buildings. This property was built for a bank. I want to point this out. I think the bank is worth that amount of money in face of the fact that it is the only bank.'"

Thus it is obvious that Semrad gave undue consideration to the intrinsic worth of the bank building rather than to its sale value..

Sec. 70.32 (1), Stats., provides: "Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the

full value which could ordinarily be obtained therefor at private sale. . . ."

"Real estate must be assessed for the purpose of taxation at its fair market value, and the market value is the price which the property will sell for on negotiations resulting in a sale between an owner willing but not obliged to sell, and a willing buyer not obliged to buy." *State ex rel. Hennessey v. Milwaukee,* 241 Wis. 548, 6 N. W. (2d) 718; *State ex rel. Kenosha Office Bldg. Co. v. Herrmann,* 245 Wis. 253, 14 N. W. (2d) 157, 14 N. W. (2d) 910; *Estate of Ryerson,* 239 Wis. 120, 300 N. W. 782.

In *State ex rel. Northwestern M. L. Ins. Co. v. Weiher,* 177 Wis. 445, 447, 188 N. W. 598, the court stated:

". . . when he [the assessor] came to fix the assessed value upon the basis named he fixed it at a sum which . . . would fairly reflect the *intrinsic worth* of the building based upon the elements mentioned, and *not upon a price which . . . could be obtained for the building if offered for sale.* The claim is that the building has an *intrinsic worth in excess of the sum it would sell for* because it was built for a specific purpose and if sold would have to be sold for a use or purpose for which it was not built, hence its selling price would not reflect its actual value *based upon its reasonable intrinsic worth.* . . . The statutory rule of assessment of real estate is to assess it at its sale value and *not at its intrinsic value if that differs from the sale value.* As was said in *State ex rel. Oshkosh Country Club v. Petrick,* 172 Wis. 82, 84, 178 N. W. 251, the statute 'requires that *property shall be assessed with reference to purposes for which* it may be sold rather than the purposes to which it presently may be devoted.' "

In the case at bar the court rightly concluded that "In view of the above quotation of our supreme court this court is of the opinion that Mr. Semrad in determining the assessment value placed too much reliance on its intrinsic worth and did not give sufficient consideration to its actual sale value." Consequently, the assessment value placed upon the

property in question by the board of review cannot be sustained.

The board of review assessed also as a part of the real estate the counters, screens, three booths, two marble desks, safety-deposit boxes, and the vault door. Sec. 70.03, Stats., provides that the term "real property" shall include "all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto." Under this provision the court held in *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429, that machines connected to the building by wires and belts were fixtures and as such were properly assessed for taxation as part of the realty. However, in relation to banks and trust companies, sec. 70.40, Stats., provides:

"The taxation of the income of state banks, national banks, and trust companies shall be in lieu of all taxes upon the capital, surplus, property, and assets of such banks, except that no real estate owned by any such bank or trust company or constituting the whole or any part of its capital, surplus, or assets shall be exempt from taxation; and excepting further that no tangible personal property owned by such bank or company shall be exempt from taxation unless such personal property be furniture, fixtures, and equipment used in the banking offices of such bank or trust company."

Manifestly, under said unambiguous provision in sec. 70.40, Stats., that "no tangible personal property owned by a bank shall be exempt from taxation unless such personal property be furniture, fixtures, and equipment used in the banking offices of such bank" some of the property here in question is clearly within the exemption from taxation as provided in sec. 70.40, Stats. This statute does not change the rule as to what bank fixtures are personal property and what are real estate.

As the assessment made by the board of review was based largely upon Semrad's theory and testimony as to the reproduction cost of the building and the intrinsic worth

thereof as a bank, the issues in the case at bar are materially different than the issues and procedure in *State ex rel. First & L. Nat. Bank v. Board of Review,* 237 Wis. 306, 296 N. W. 614; and consequently that case is not in point.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). This court stated in *State ex rel. North Shore Development Co. v. Axtell* (1934), 216 Wis. 153, 157, 256 N. W. 622, and in *Buildings Development Co. v. Milwaukee* (1937), 225 Wis. 357, 274 N. W. 298, that if there is credible evidence before the board of review that may in any reasonable view support the assessor's valuation, that valuation must be upheld by the board.

The majority opinion concludes that the assessor, Semrad, gave undue consideration to the intrinsic worth of the bank building rather than to its sale or market value. However, in reaching this conclusion the majority opinion ignores entirely the following testimony of Semrad:

"I placed that building in seventy per cent condition. It is built of good quality brick, face brick on three sides and the workmanship in that building is very good, probably the best that could be obtained at the time that the bank was built. That left a sound value of $37,415, and after making a careful analysis of the location of that bank with respect to others, a resale at twenty per cent left $29,932. *In my opinion, that is market value of the bank.* I felt that were this bank put up for sale the party owning the bank could easily get that amount of money and accept that amount of money. . . .

"It is the market value we are considering here and I placed a value of $32,570 and that in my opinion is a fair market value. . . .

"I think I have been fair in placing it in its probable present condition and in considering all the elements affecting that property and because I have still added a resale factor which, in my opinion and belief, is a fair market value of that property."

The foregoing quoted testimony of the assessor is ample credible testimony to support the assessment under the decisions of this court, and furthermore, the board of review reduced the assessment $4,570 below that fixed by the assessor.

It was proper for the assessor to consider reproduction cost less depreciation as one of the elements in arriving at market value. This court in *State ex rel. North Shore Development Co. v. Axtell, supra,* stated (pp. 155, 157) :

"Testimony was presented as to 'cost, depreciation, replacement value, earnings, industrial conditions,' location, and occupancy, all of which are proper for consideration in determining assessment value. . . .

"The reproduction cost of the building is shown, and this with the admittedly correct assessment of the land, disregarding obsolescence, exceeds by nearly $13,000 the amount of the assessment."

In *State ex rel. Northwestern M. L. Ins. Co. v. Weiher* (1922), 177 Wis. 445, 450, 188 N. W. 598, it was stated:

"The relator has criticized quite severely the use of the basic fifty-three cents per cubic foot for large business buildings in Milwaukee. As we understand it, the fifty-three cents per cubic foot was a starting point merely, to which was added or deducted the proper amount, depending upon the character of the construction of the building, the amount of depreciation, obsolescence, the location, and many other elements that would affect the sale value of the building. So used, the basic fifty-three cents per cubic foot was not an arbitrary assessment, but it was a very useful and fair method of insuring such uniformity of valuation as the circumstances would permit."

We cannot agree with the correctness of the following sentence appearing in the statement of facts preceding the majority opinion:

"Semrad assessed the value of the bank's property on the basis of sixty-six cents per cubic foot as against twenty-

nine cents and thirty-two cents per cubic foot in computing the value of other mercantile buildings in the same business block and of like materials and costing no more at the time of construction or on a reconstruction basis."

The assessor, Semrad, had been employed by the Wisconsin department of taxation and had had wide experience in assessing approximately thirty different bank buildings throughout the state, and apparently was well versed in present building costs of commercial buildings computed on a cubic-foot basis. In his testimony he pointed out differences in construction between the commercial buildings in New Lisbon on which he placed reproduction costs at thirty-two cents and twenty-nine cents per cubic foot with that of the relator's bank building on which he placed a sixty-six cents per cubic foot cost of reproduction and justified such differential. According to Semrad, the other mercantile buildings referred to did have a different construction than the bank building and would cost less on a reproduction basis.

I am authorized to state that Mr. Justice GEHL joins in this dissent.