ESTATE OF TURER: LICHTSINN, Executor, Appellant, v. TURER, Respondent.*

*March 3—March 30, 1965.*

* Motion for rehearing denied, with costs, on June 1, 1965.

For the appellant there was a brief by *Lichtsinn, Dede, Anderson & Ryan* of Milwaukee, for Harold F. Lichtsinn, executor, and by *Lewis A. Stocking* of Milwaukee, Guardian *ad litem,* for John and Jo Ann Richardson, and oral argument by *Eldred Dede.*

For the respondent there was a brief and oral argument by *Henry L. Arnold* of Milwaukee.

FAIRCHILD, J.  1. *Sufficiency of proof.* Appellant executor contends that the proof of the cost of support furnished by Sidney is so uncertain that no definite finding as to amount is possible. The court, however, determined only that the cost for the six years before Betty Jane's death exceeded $4,100. We deem the finding was sufficiently supported. Betty Jane's complaint in the action against Richardson fixed the amount at $4,950 for the period from 1954 to 1959. Sidney testified that he paid all the living expenses. He indicated that milk and other food for the family of four ran from $1,700 to $2,000 per year, and that there were other expenditures partly attributable to the children. It is clear enough, also, that Sidney paid virtually all the expenses during the 1954–1961 period for which the $4,100 was recovered.

2. *Waiver or estoppel.* Appellant executor contends that Sidney waived, or is estopped from making, a claim that he paid the living expenses of the children because he was aware of Betty Jane's action against Richardson in which she alleged she paid them. The inconsistency is more apparent than real. This court has held that where the child of divorced

parents is supported as a member of the family of his mother and her second husband, for which the second husband is the breadwinner, the mother may recover accrued unpaid support money from her divorced husband.[1] The theory was that the mother, the homemaker, presumably suffered pecuniary injury because of the use of the resources of the new family to provide that which the father had the duty to provide, but did not. Permitting the mother to recover from the father in this situation does not necessarily exclude the second husband from asserting a claim to the proceeds as between himself and the mother.

3. *The merits.* The original theory of Sidney's claim was that Betty Jane was liable upon implied contract to pay Sidney the reasonable value of the food, lodging, clothing, and the like, furnished to her children. The county court declined to allow the claim on that theory, and we agree. The court did recognize, however, that an identifiable fund was in the hands of the executor, that the fund represented the accrued obligation of the children's father to contribute to the support of the children in the past, and that Sidney had furnished more than that amount of money in order to support them. The court evidently concluded that these facts gave Sidney an equitable claim upon the fund.

Appellant executor has cited authorities dealing with several aspects of the type of situation before us where children are cared for in the family headed by a stepparent. Under some circumstances, the stepparent may become obligated to support his stepchildren.

"It is practically the universal rule that a stepfather, as such, is under no obligation to support the children of his wife by a former husband, but that if he takes the children into his family or under his care in such a way that he places

---

[1] *Braun v. Brown* (1957), 1 Wis. (2d) 481, 486, 85 N. W. (2d) 392, 86 N. W. (2d) 427.

himself in loco parentis, he assumes an obligation to support them, and acquires a correlative right to their services." [2]

"If, however, a stepparent has assumed the parental relation to the children and holds them out to the world as members of his own family, he places himself in loco parentis, and incurs the same liability with respect to their support and education as if they were his own children." [3]

The right of a stepparent to compensation from the separate property of a stepchild is also dependent upon the circumstances under which the stepchild resides with the stepfather's family. [4]

There is a presumption that where near relatives, by blood or marriage, reside together as a family, services rendered by one to another, including the provision of board and other maintenance, are gratuitously rendered. [5]

We are not concerned in this case with a claim by Sidney that he is entitled to recover the value of the care from any separate property of the children. Nor are we concerned with any claim by the children, the public, or some third party who has supplied necessaries that Sidney has entered into a relationship with the children which obligated him to provide support. We are not concerned with an allowance of a claim against the mother upon a theory of contractual liability. Although a wife in this situation could make an enforceable agreement with her second husband to compensate him out of her separate estate for his contribution to the care of her children by a former marriage, there is no evidence that Betty Jane made such a promise. We do not hesitate to extend the presumption of gratuity above men-

---

[2] 39 Am. Jur., Parent and Child, p. 699, sec. 62.

[3] 67 C. J. S., Parent and Child, p. 808, sec. 80.

[4] 67 C. J. S., Parent and Child, p. 809, sec. 80.

[5] *Hall v. Finch* (1871), 29 Wis. 278, 286; *Estate of Schmidt* (1896), 93 Wis. 120, 124, 67 N. W. 37; *Estate of Goltz* (1931), 205 Wis. 590, 238 N. W. 374.

tioned so that in the absence of an express promise she incurred no liability to pay for the support furnished her children in the home maintained by her second husband. But the existence or absence of an obligation of the stepfather to the children or they to him, and the absence of a contractual obligation of the mother to the stepfather do not answer the question presented.

Here the children have been supported for a period of years by the combined efforts of their mother and stepfather. The mother has kept the house and supplied most of the personal care. The stepfather has furnished the money and presumably some of the personal care. During the same period, the children's father has had a duty to contribute to the support of the children, but has failed to do so. He has now paid over an amount of money which has been judicially determined to be an acquittance of his obligation for the particular past years. As between the mother, who happens in this case to be deceased, and the stepfather, who is entitled to the fund?

The members of this court hold different views as to the proper answer:

The first view, held by the majority, is that the money paid by Richardson represents the obligation of the father during certain past years. This obligation has been fulfilled by the stepfather during those years and he therefore has supplied the consideration for the money collected by the executor. It is significant that the amount of Richardson's obligation was measured by the amount of money spent for support, and this money was furnished by Sidney. It is reasonable to suppose that if Betty Jane had lived she would at least have used the money for family purposes and that if Richardson had paid the money in periodic instalments in the past, she would have used it to help with family expenses. There is unjust enrichment of Betty Jane's estate if

the fund is not now paid to Sidney. The allowance of the claim amounted to the recognition of a resulting trust and was proper.

The second view, held by the minority, is that the support was provided by the joint efforts of mother and stepfather. The mother was homemaker for her husband and herself as well as the children; the father was breadwinner for all four. Their respective contributions to the support of the children cannot be separately evaluated in money. Since our established rule permits the mother to recover support money from the father in situations like the present one,[6] it becomes part of her separate estate and she should not be required to account for it to the stepfather in the absence of an express agreement or other objective evidence of an intention to pay it over.

Mr. Chief Justice CURRIE, Mr. Justice GORDON, Mr. Justice BEILFUSS, and Mr. Justice HEFFERNAN hold the first view above stated and would affirm the judgment. Mr. Justice HALLOWS, Mr. Justice WILKIE, and the writer of this opinion hold the second view, and would reverse.

*By the Court.*—Judgment affirmed.

---

[6] *See Braun v. Brown, supra,* footnote 1.