Nanette Dembitz, J.
This is a proceeding under article 4 of the Family Court Act for payment of child support pursuant to a Mexican divorce decree that incorporated a separation agreement. Conceding that he has stopped making the payments specified in the agreement, respondent seeks to justify nonpayment on the basis of petitioner’s breach of various provisions of the agreement. Petitioner contends that the doctrine *231 of dependent conditions on which respondent relies, only governs in proceedings to enforce an agreement, and is inapplicable in proceedings like the instant one to enforce a decree incorporating an agreement.
Dependency op Conditions in Agreements and Decrees
The distinction urged by petitioner between suits on agreements and on decrees in regard to dependency of conditions was unanimously rejected in Callender v. Callender (37 A D 2d 360) in which the court reversed a lower court ruling that apparently was based on the alleged distinction. Noting that the agreement therein provided for its survival despite its incorporation in a decree (as is likewise true of the agreement at bar), the court pointed out (p. 362) that entry of a decree cannot change the terms of an agreement. As to the illogie of the view that a decree embodying an agreement can be inters preted differently from the agreement (cf. Greene v. Greene, 31 Misc 2d 1009, 1010. And, see, Goldner v. Goldner, 284 App. Div. 961 and Harris v. Harris, 197 App. Div. 646 upholding the dependency of support and child support provisions in separation decrees).
While a decree incorporating an agreement must therefore receive the same construction as the agreement, the courts must modify a decree if the child’s welfare so requires. Both aspects of this principle were expressed in Matter of Sawyer v. Larkin (37 A D 2d 929), decided after Callender, which was again a suit on a Mexican decree incorporating a separation agreement.[1] Modification of a decree in the interests of the child, regardless of the agreement, is a logical corollary of the principle that the child, not being a party to the separation agreement, is not bound thereby, and has a common-law and statutory right to parental support and to judicial protection of his welfare. (See Moat v. Moat, 27 A D 2d 895, 896; Kulok v. Kulok, 20 A D 2d 568, 569; Van Dyke v. Van Dyke, 278 App. Div. 446, 448-449; Family Ct. Act, § 461; Domestic Relations Law, § 240; “ Almandares ” v. “ Almandares”, 186 Misc. 667, 671; 2 Foster and Freed, Law and the Family [1966], § 28.28.)
While Altschuler v. Altschuler (248 App. Div. 768) is often cited for its dictum that in regard to the dependency of eondi *232 tions “ a judicial decree * * * is distinguishable from * * * contracts of separation ’ ’,[2] in fact the decision seems consistent with the Callender-Larkin rulings discussed above. Altschuler presented the issue of whether a divorce decree providing for child support and visitation should be modified to strike the support provision because the mother had for justifiable reasons removed the children from New York to California. The court’s continued enforcement of the support obligation seems based on the welfare of the children as ‘1 the paramount consideration ’ ’ (248 App. Div. 768) rather than on a necessary independence between the support and visitation provisions of a decree.[3]
In the instant case, there is no indication that the welfare of the child requires any deviation from the enforcement of the decree in full conformity with the agreement incorporated therein. Thus, under the Callender and Larkin rulings, this court’s function is to determine the proper interpretation of such agreement, and thus of the decree, with regard to the dependency of its conditions.
Petitioner’s Alleged Violations of Agreement and Decree
1. Visitation. Respondent defends his termination of the monthly child support payments required by the agreement on the ground that the petitioner interfered with and deprived him of agreed visitation. The court concurs with respondent that visitation provisions go to the essence of an agreement for child support and that visitation and support are generally therefore dependent conditions (see Duryea v. Bliven, 122 N. Y. 567, 570-571; Borax v. Borax, 4 N Y 2d 113, 116; Callender v. Callender, 37 A D 2d 360, supra; Fleischer v. Fleischer, 25 A D 2d 901). However, appraising the conflicting testimony in this lengthy trial with the aid of the opportunity to observe *233 the witnesses, the court finds that there was no violation by petitioner of the visitation provision.
Respondent’s satisfactory visitation with the child deteriorated after his remarriage. While it appears that petitioner was less than cordial to respondent’s second wife and to his and her relatives, the evidence shows that the child’s attempt to condition visitation on seeing respondent alone rather than in company with his second ¡wife, was the child’s decision rather than petitioner’s. The breakdown of visitation appears to have been primarily due to respondent’s failure to dedicate the amount of time, effort, and patience required to overcome psychological problems attendant on his remarriage.
■2. Use of Stepfather’s Surname. Respondent urges that the child’s use for approximately the past five years of her stepfather’s surname establishes petitioner’s violation of the provision of the agreement that each party refrain from hampering the development of the child’s love for the other. Enforcement of such a broad and vague provision presents difficulties (cf Borax v. Borax, 4 N Y 2d 113,116.). Nevertheless, a mother’s stimulation of a child’s abandonment of his father’s name, symbolizes a fundamental interference with the father-child relationship ; and such conduct might therefore be deemed a breach of a condition of the support obligation. (See Warshaw v. Ginsburg, 245 Cal. App. 2d 513.) For, the father’s right to have his child use his name ‘ ‘ may not be lightly brushed aside ’ ’.[4] However, use of the mother’s and stepfather’s surname may vitally serve the child’s welfare (see Niesen v. Niesen, 38 Wis. 2d 599; Matter of 1 ‘ Shipley ’ ’, 26 Misc 2d 204); in that event, even if there were a specific provision of the agreement against the child’s change of name, its observance would not constitute a condition for enforcement of the support provisions of the decree (see discussion of Larkin principle, supra).
In the case at bar the evidence shows that the child herself, despite discouragement from petitioner, insisted on using her stepfather’s surname, her psychological need to do so arising from her estrangement from respondent. Under these circumstances the use of the name does not vitiate respondent’s decreed support obligation.
3. Medical Consultation Provision. Petitioner concededly arranged for plastic surgery on the child’s nose when she was ¿ teenager and keenly desirous of it, without consulting respond *234 ent. He argues that she thus violated the provisions of the agreement that respondent (who is a pediatrician) arrange for “ all medical, dental, hospitalization and other similar services ” for the child and that doctors of his choice determine the child’s need for treatment; and he contends that this violation excuses his breach of his monthly support obligation. "While this nasal surgery, though for a cosmetic rather than medical purpose, should be deemed within the general intent of the medical supervision provision, the court concludes that this provision and the monthly support provision of the agreement are independent. Whether provisions are dependent must be judged by their substantiality in the light of the entire agreement and by considerations of justice and proportion. (Jacob & Youngs v. Kent, 230 N. Y. 239, 242-243 [Cardozo, J.]; Borax v. Borax, 4 N Y 2d 113, 115-116, supra; Walker v. Walker, 23 A D 2d 764, 765; Seligmann v. Mandel, 16 Misc 2d 1026, 1029.)
4. College ‘Consultation Provision. Finally, respondent urges that petitioner violated the provision of the agreement that she “ confer with a view to arriving at a choice of college ” with respondent, and that his monthly support as well as his payment of college expenses was conditioned on the college consultation provision. Evaluating the lengthy and conflicting testimony, the court finds that petitioner failed to “ attempt to carry out in good faith” the college consultation provision (see Duryea v. Bliven, 122 N. Y. 567, 571, supra). That petitioner may have had to communicate with respondent in ¡writing instead of orally ¡because of respondent’s attitude towards her or that respondent would have urged consideration of the relative expense of various colleges, does not justify her failure. However, the college provision deals with a special item of support for a particular period. As in the case of the medical supervision provision, the court concludes that the respondent’s obligation to pay college expenses is dependent on the college consultation provision but that his monthly support obligation is an independent covenant.
On the basis of all the evidence, certain concessions by the parties, prior orders of1 this court, and the above conclusions and findings, the court directs the following payments: $6,875 covering monthly support payments for March, 1969 and from September, 1971 through May, 1973 (the court finding that the provision for halving of monthly support while respondent paid the child’s room and board at college is inapplicable inasmuch as he made no such payments and is not herein ordered to do so); $1,800 for the child’s unpaid tuition at preparatory *235 school; and $50 for summer camp expenses. Disallowed are orthodontia expenses of $240 (the court finding that petitioner violated the medical-dental supervision provision in her independent change of the child’s orthodontist) as well as some $8,000 for college expenses.
Awabd of Counsel Fees
Counsel for both parties have submitted affidavits relative to petitioner’s resources, to be considered in connection with her counsel’s fee in the event that Kann v. Kann (38 A D 2d 545) is deemed applicable. While Kann concerned the award of a fee under section 237 of the Domestic Eelations Law, it should be deemed applicable to fee requests arising like the instant one under section 438 of the Family Court Act. Kann’s declaration that if petitioner “ is able to pay her own counsel, no award may be made ” (38 A D 2d 545), therefore governs in appropriate cases in this court. For, counterpart provisions of the Family Court Act and the Domestic Eelations Law should receive similar construction (Matter of Steinberg v. Steinberg, 18 N Y 2d 492). There is no policy reason for a difference in fee awards under the two acts; and disparate rulings would stimulate forum shopping in the enforcement of divorce decrees, over which the Family Court and the Supreme Court have concurrent jurisdiction.
As to the proper interpretation of Kann emphasis seemingly should be placed on petitioner’s ability to pay a fee, rather than whether she has in fact paid it. The latter test would lend itself to the possibility of manipulation (cf. Winter v. Winter, 68 Misc 2d 654, 657, mod. on other grounds 39 A D 2d 69, affd. 31 IST Y 2d 983). However, the logic of Kann seems inapposite to a suit like the instant one for arrears of child support; Kann as well as Winter concerned alimony and Kann spoke in terms of a “matrimonial action” (38 A D 2d 545). Eegardless of Kamn, however, the affidavits indicate petitioner’s ability to supplement a fee award and that such supplementation was contemplated as a possibility.
In the instant case there is no indication that respondent made any offer to comply with the obligations herein enforced and that this litigation could have been avoided; further, it is clear that petitioner’s counsel performed extensive, time-consuming services before and at trial as well as in the preparation of memoranda, with an unusual degree of competence and diligence. Under all the circumstances it appears reasonable for respondent to pay the sum of $3,750 for petitioner’s counsel fee plus $560 for his disbursements.
*236 Unless the parties otherwise agree, the respondent is directed to pay the amounts specified herein in three equal installments at tiwo-anonth intervals beginning one month from the date of this decision.

. In Callender and Larkin, while the decrees were Mexican as in the instant case, the court was unconcerned with Mexican law, recognizing that the New York contacts were of primary significance. As to full faith and credit for the decrees and laws of sister States, it appears that the Callender-Larkin rule expresses the general common law of the United States.

. E.g., Goldstein v. Goldstein (134 N. Y. S. 2d 886, 887); Blumberg v. Blumberg (117 N. Y. S. 2d 906, 909, affd. 280 App. Div. 986); Greene v. Greene (31 Misc 2d 1009, 1010, supra).

. That Altschuler is primarily based on the welfare of the children rather than the independence of conditions, is indicated by the fact that all of its supporting citations are decisions holding that the welfare of the child may require an award of custody to an out-of-State parent (see Kane v. Kane, 241 Mich. 96; Hart v. Hart, 266 Mich. 564; Epstein v. Epstein, 234 Mich. 200; cited 248 App. Div. 768). Further, Altschuler states that Harris (supra) “is not at variance with our ruling”’ (248 App. Div. 768). In Harris the court treated alimony and visitation as dependent conditions, there being no indication that the welfare of the child was involved in the application for arrears in Harris. (See 197 App. Div. 646, 649.)

. See Young v. Board of Educ. of City of N. Y. (114 N. Y. S. 2d 693, 694); see, also, Matter of Pollack (2 A D 2d 756); Matter of Nitzberg (200 Misc. 74