Bernice FUERST, Plaintiff-Appellant, v. Lawrence
FUERST, Defendant-Respondent.

Court of Appeals

*No. 79–282. Submitted on briefs September 4, 1979.—*
*Decided November 27, 1979.*
(Also reported in 286 N.W.2d 861.)

For the plaintiff-appellant the cause was submitted on the briefs of *Ron Smith* and *Robinson and Smith* of Appleton.

For the defendant-respondent the cause was submitted on the brief of *Jerome H. Block* and *Bollenbeck, Block, Froehlich & Seymour, S.C.* of Appleton.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. This is an appeal from the property division of a divorce judgment made under Wisconsin's recently revised laws applicable to actions affecting marriage.

Lawrence and Bernice Fuerst were married on June 20, 1954. At the time of their divorce trial on October 16, 1978, Lawrence was 60 years old and Bernice was 51. The marriage was Lawrence's first. Bernice had two children by a prior marriage who lived with the Fuersts from the date of their marriage until the children were no longer minors, a period of twelve years. Lawrence never adopted Bernice's children, and their father's parental rights were never terminated. Bernice did not work outside the home during much of the children's minority.

At the time of the marriage, Lawrence's estate consisted of a homestead, two lots, and $700 cash. The trial court found the value of the property each party brought into the marriage to be:

| Lawrence: | Homestead | | $13,750 |
|---|---|---|---|
| | Lots | | 500 |
| | Cash | | 700 |
| | | TOTAL | $14,950 |
| Bernice: | Stove and Refrigerator | | 200 |
| | Cash | | 400 |
| | | TOTAL | $    600 |
| | | GRAND TOTAL | $15,550 |

The trial court found the estate accumulated during the marriage to be $72,109.76, and the total value of the estate of the parties to be $87,659.76. The trial court initially divided the property equally between the parties,

as required by sec. 767.255, Stats.[1] It then adjusted this division, crediting each party with the value of property brought into the marriage, as may be done pursuant to sec. 767.255(2). The court also awarded to Bernice one-

---

[1] Section 767.255, Stats. provides in part:

The court shall presume that all other property except inherited property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

(1) The length of the marriage.

(2) The property brought to the marriage by each party.

(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

(4) The age and physical and emotional health of the parties.

(5) The contribution by one party to the education, training or increased earning power of the other.

(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during marriage.

(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

(8) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(10) The tax consequences to each party.

(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(12) Such other factors as the court may in each individual case determine to be relevant.

third of the value of the property Lawrence brought into the marriage. This adjustment resulted in an award of $41,638.21 to Bernice and an award of $46,020.17 to Lawrence. The court then deducted $12,526.50 from Bernice's share and gave that sum to Lawrence to compensate him for his support of Bernice's two minor children.

Appellant Bernice Fuerst argues that the trial court erred in its property division in two respects: (1) the court required the appraisers of the homestead to submit a bona fide offer to purchase along with their appraisal, and (2) the court considered Lawrence's support of her children to be a proper factor in altering the presumptive equal division of the property.

### Value of Homestead

In determining the fair market value of the homestead, the court stated that it would only accept appraisals which were accompanied by offers to purchase.

Several real estate brokers testified to the value of the homestead, which Bernice and Lawrence had agreed should be awarded to Lawrence. An abridgment of their testimony follows:

David Radke, a full-time realtor in New London, appraised the property at $39,000 on August 9, 1978, but offered to purchase the property for $35,000 at trial.

Neil Freeman, a fee appraiser in New London, submitted a written appraisal in which he stated that the reasonable present market value of the property was $42,400. Mr. Freeman did not make an offer to purchase the property.

Plaintiff, Bernice Fuerst, who had been a part-time real estate broker for about one and one-half years at the time of trial, stated that the property was worth $42,000, but that she could probably sell it for $44,000. She made an oral offer to purchase the property for $39,000 at trial.

Jim Nolan, an appraiser in Marion, Wisconsin, did not testify at trial, but submitted a written appraisal which found the fair market value to be $32,000 and made an offer to purchase for $28,800. It is disputed whether the parties stipulated that they would abide by Mr. Nolan's appraisal, or whether he was an appraiser appointed by the court.

The appraisals ranged from $32,000 to $42,400 and the offers to purchase extended from $28,800 to $39,000. The court found the value of the property to be $37,000. In divorce actions, findings of value by the trial court will be upheld unless against the great weight and clear preponderance of the evidence. *Jost v. Jost,* 89 Wis.2d 533, 541, 279 N.W. 202 (1979). The court's finding of value was $5,000 higher than the lowest appraisal and $5,400 below the highest appraisal. Under these facts, it is difficult to understand how the court's finding as to the value of the homestead could be considered error.

Appellant argues, however, that the court's requirement that the appraisal must be accompanied by an offer to purchase does not comply with the supreme court's definition of market value. In *State ex rel. New Lisbon State Bank v. New Lisbon,* 260 Wis. 607, 611, 51 N.W.2d 509, 511 (1952) the court said:

" '[M]arket value is the price which the property will sell for on negotiations resulting in a sale between an owner willing but not obliged to sell, and a willing buyer not obliged to buy.' *State ex rel. Hennessey v. Milwaukee,* 241 Wis. 548, 6 N.W.(2d) 718; *State ex rel. Kenosha Office Bldg. Co. v. Hermann,* 245 Wis. 253, 14 N.W.(2d) 157, 14 N.W.(2d) 910; *Estate of Ryerson,* 239 Wis. 120, 300 N.W. 782."

An appraiser required to submit an offer to purchase with his appraisal is not the "willing" buyer contemplated by the *New Lisbon* test. Neither is the seller under

these circumstances willing to sell to a person planning to make a profit in an immediate resale. Had the trial court based its finding on the offers to purchase that it asked the witnesses to give, this would be error. However, the trial court did not use this test in its decision and findings of fact.

The court's finding that the homestead had a value of $37,000 is closer to the median of the appraisal values than to the median of the offer to purchase values. The court stated that its purpose in requesting the offers to purchase was to add credibility to the appraisers' values. It does not appear that the court used the offers to purchase in determining the fair market value.

Therefore, we do not find that the court's finding is against the great weight and clear preponderance of the evidence.

### Credit for Support of Children

The trial court assumed that Lawrence should be compensated for his support of Bernice's children. In order to determine what value should be given to Lawrence's support, the trial court solicited a letter from a supervisor at the Waupaca County Department of Social Services, which read in pertinent part:

> I can give you my personal estimate based solely on my 22 years experience with this agency. I would estimate the figure per child in 1954 to be approximately $34 per month increasing by 1965 to approximately $90. I feel that a $60 per month per child average for the years in question would be reasonable.

The trial court sent a copy of this letter to the parties' attorneys, and scheduled a hearing so that they could submit additional testimony. At the hearing held November 30, 1978, neither party presented testimony on the issues of whether or how much consideration should be

given for defendant's support of his wife's children. Neither party objected to the court's use of the letter from the Department of Social Services supervisor as a basis for setting a value.

The court calculated the cost of the childrens' support during their minority on the basis of $34.00 per child per month increased by $5.00 per month each year after 1954 through 1967 resulting in a total of $17,772. The court subtracted the $1,070 in child support that Bernice received from the children's father, then reduced the resulting sum of $16,702 by one-fourth because Bernice had grown garden vegetables for the family and the children had mowed the lawn and painted the house and garage. Finally, the court offset the resulting sum of $12,526.50 against Bernice's share of $41,638.21.

Although the appellant objects for the first time on appeal to the trial court's consideration of Lawrence's support of her children, a reviewing court may, in the exercise of its discretion and in the proper case, consider new issues raised for the first time on appeal. *Allen v. Allen,* 78 Wis.2d 263, 254 N.W.2d 244 (1977). The supreme court in *Shetney v. Shetney,* 49 Wis.2d 26, 37, 181 N.W. 2d 516 (1970), explained that the general rule that an appellate court will not consider, as a matter of right, matters not properly presented in the trial court, is a rule of administration and not one of judicial power. The court added that there are well recognized exceptions to this general rule including cases where all the facts are of record and the issue raised is a legal one. In this case, the issue presented raises a question of law. We elect to consider the issue.

The division of property in a divorce action is within the sound discretion of the trial court and will not be disturbed unless an abuse of discretion is shown. *Polleck v. Polleck,* 8 Wis.2d 295, 298, 99 N.W.2d 98 (1959).

"An abuse of discretion arises when the trial court has failed to consider proper factors, has made a mistake or error with respect to the facts upon which the division was made, or when the division itself was, under the circumstances, either excessive or inadequate." *Selchert v. Selchert*, 90 Wis.2d 1, 280 N.W.2d 293, 296 (Ct. App. 1979), citing *Wilberscheid v. Wilberscheid*, 77 Wis.2d 40, 44, 252 N.W.2d 76, 79 (1977).

The question we face is two-fold: (1) Is a stepparent's financial support of stepchildren a proper factor for a trial court to consider in altering the presumptive equal division of a marital estate; and (2) Did the trial court in the case before us consider the necessary facts upon which the division was made?

We find that the trial court did not abuse its discretion in considering the issue a proper factor, but that it did abuse its discretion "with respect to the facts upon which the division was made." *Selchert*, 90 Wis.2d at 7, 280 N.W.2d at 296.

(1) Is a stepparent's financial support of stepchildren a proper factor for a court to consider in a property division?

Whether a particular factor is a proper one for the court to consider in a property division is determined by examining the statute directing the distribution of property in a divorce, *Polleck v. Polleck*, 8 Wis.2d 295, and by following the Wisconsin Supreme Court's guidance in reviewing divorce actions. *Williams v. Williams*, 44 Wis.2d 651, 661, 171 N.W.2d 902 (1969). A trial court need not consider all factors set forth in the statute or cases. Moreover, it is for the trial court to determine what weight and effect should be given the various considerations. *Carty v. Carty*, 87 Wis.2d 759, 768, 275 N.W.2d 888 (1979).

Section 767.255, Stats., outlines the factors a court may consider when altering the presumptive equal division of the marital estate.[2]

Although support of a spouse's children by a prior marriage is not one of the factors enumerated in sec. 767.255 (1) to (11), Stats., it comes within the literal scope of sec. 767.255(12), "[s]uch other factors as the court may in each individual case determine to be relevant."

Section 767.255(12), Stats., by its language, confers wide discretion on the trial court to determine what factors it considers relevant to the property division.[3] The trial court is to consider each case individually in deciding what is relevant. This court is limited to reviewing whether the trial court abused its discretion in determining what factors were relevant. To determine what is "relevant" under the statute, we may look at the other factors the legislature considered relevant in a property division.

The doctrine of *ejusdem generis,* cited in 2A Sutherland, *Statutory Construction* sec. 47.17 at 103 (4th ed. 1973), states:

Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature

---

[2] *See* fn. 1.

[3] The legislative history of sec. 767.255(12) (renumbered from 247 in ch. 32, sec. 50, Laws of 1979) indicates that it was intended to expand the trial court's discretion. This subsection was not included in the original draft of the bill but was added by a substitute amendment to Assembly Bill 100 (1977), at the request of the Assembly Judiciary Committee. The committee comment in requesting that the Legislative Reference Bureau draft the amendment was that the change was necessary "to emphasize that the factors to be considered by the court are not limited to those specified in the statute."

to those objects enumerated by the preceding specific words. (Footnotes omitted.)

While some of the enumerated factors are purely economic, others also reflect equitable considerations. It is possible to calculate dollar equivalents for property brought to the marriage by each party (sec. 767.255 (2) ) and for tax consequences to each party (sec. 767.255 (10) ). In other instances, when the age and physical and emotional health of the parties (sec. 767.255 (4) ), and the length of the marriage (sec. 767.255 (1) ), are relevant factors, the court may take into account equitable as well as economic considerations.

Support of a spouse's children is a factor similar in economic and equitable considerations to sec. 767.255 (3), Stats. Section 767.255 (3) indicates that the legislature considers homemaking and child care services to be relevant considerations in dividing property. The economic equivalent of such services would be equally relevant.

The consideration of economic and equitable factors related to homemaking and child care is consistent with the legislative statement of purpose in ch. 105, sec. 1, Laws of 1977, which states, in relevant part:

(2) It is the intent of the legislature that a spouse who has been handicapped socially or economically by his or her contributions to a marriage shall be compensated for such contributions at the termination of the marriage, insofar as this is possible . . . .

. . . .
(4) This act is not intended to make a divorce, annulment or legal separation easier to obtain. Its sole purpose is to promote an equitable and reasonable adjudication of the economic and custodial issues involved in marriage relationships.

The factor considered in this case is an "economic" issue involved in the marriage relationship. Lawrence did

sustain an economic handicap by his contributions to Bernice's children, while Bernice was benefitted economically by not having to pursue alternate sources of support.

In *Von Trott v. Von Trott*, 118 Wis. 29, 36, 94 N.W. 798, 800 (1903), the supreme court indicated that it was proper for the trial court to consider the stepfather's contribution to the support of his stepchildren in reducing the natural parent's property award in a divorce. When referring to the appellant wife, the court said:

> She had children of mature age, educated in part at least by the aid of respondent, and from whom she naturally had reasonable expectations of pecuniary and other assistance if in need thereof. They were, as it appears, capable of rendering such assistance and may be reasonably expected to so remain during her life. They were assisted to that situation materially at the expense of respondent. These and many other things that might be mentioned were very proper matters for consideration by the trial judge in reducing the amount of property which under other circumstances might have been awarded appellant.

(2) Did the trial court err with respect to the facts upon which the division was based?

The extent of a stepparent's entitlement to reimbursement for support given stepchildren was discussed in *Estate of Turer*, 27 Wis.2d 196, 133 N.W.2d 765 (1965). Although the factual context is different than that of the case before us, the general principles of law stated by the court are applicable.

In *Turer* the court discussed several aspects of a stepparent's relationship with a stepchild.

Under some circumstances, the stepparent may become obligated to support his stepchildren.

"It is practically the universal rule that a stepfather, as such, is under no obligation to support the children of his wife by a former husband, but that if he takes the children into his family or under his care in such a way

that he places himself in loco parentis, he assumes an obligation to support them, and acquires a correlative right to their services." [Citing 39 Am. Jur., *Parent and Child* sec. 62 at 699].

"If, however, a stepparent has assumed the parental relation to the children and holds them out to the world as members of his own family, he places himself in loco parentis, and incurs the same liability with respect to their support and education as if they were his own children." [Citing 67 C.J.S., *Parent and Child* sec. 80 at 808].

The right of a stepparent to compensation from the separate property of a stepchild is also dependent upon the circumstances under which the stepchild resides with the stepfather's family. [67 C.J.S., *Parent and Child* sec. 80 at 809]. *Estate of Turer,* 27 Wis.2d at 200–201.

The Wisconsin court reiterated that under some circumstances a stepfather may assume an obligation to support a stepchild in *Niesen v. Niesen,* 38 Wis.2d 599, 606, 157 N.W.2d 660 (1968).

After its discussion of the concept of *in loco parentis,* the court in *Turer,* 27 Wis.2d 196, restated the presumption of gratuitous services between family members which exists in Wisconsin[4] and extended it to include stepparents.

There is a presumption that where near relatives, by blood or marriage, reside together as a family, services rendered by one to another, including the provision of board and other maintenance, are gratuitously rendered.

We do not hesitate to extend the presumption of gratuity above mentioned so that in the absence of an express promise she incurred no liability to pay for the support furnished her children in the home maintained by her second husband. (Footnote omitted.) *Turer,* 27 Wis.2d at 201–202.

[4] *Hall v. Finch,* 29 Wis. 278, 286, (1871); *In re Schmidt's Estate,* 93 Wis. 120, 124, 67 N.W. 37 (1896); *Estate of Goltz,* 205 Wis. 590, 238 N.W. 374 (1931).

In *McManus v. Hinney* 31 Wis.2d 333, 337–38, 143 N.W.2d 1, 3 (1966), the court stated that the significant factor in determining whether a stepparent stands *in loco parentis* to a minor child is the stepparent's intent to assume those obligations.

A person stands *in loco parentis* to a minor child if he has assumed the status and obligation of a parent without a formal adoption. Whether or not this relationship exists is a matter of intent to be deduced from the facts of a particular case. In determining whether a person stands *in loco parentis*, factual considerations may include the children's ages, their dependence upon the person claimed to be *in loco parentis*, and whether such person in fact supports the children and exercises the duties and obligations of a natural parent.

. . . .

The determination of the *in loco parentis* question involves matters of fact and intention which the trial court in its discretion should resolve after affording the parties an opportunity to offer additional evidence.

In the case before us, the trial court assumed that there was no obligation on the part of Lawrence to support Bernice's children and prevented any inquiry into Lawrence's intention to assume that obligation. The following dialogue took place during the direct examination of Bernice.

Q  What did—how did he feel about contributing anything toward the support of the children?

A  Well, he had no objection to my taking care of the bills of the children—

MR. BLOCK: Pardon me, I will object because these are not his legal responsibilities, and this question is irrelevant as to how he felt.

MR. SMITH: Your Honor, I guess I am trying to save time because what I think is going to happen, he is going to get up and say [he] supported the children, and I have to call in rebuttal; and if Mr.

Block wants to proceed in that way, I guess we can.

THE COURT: What was the question?

MR. BLOCK: How did he feel about supporting those children?

MR. SMITH: No, I said, how did he feel about contributing to the support of the children.

MR. BLOCK: Question of feeling is immaterial, not his legal obligation.

MR. SMITH: I will rephrase the question.

THE COURT: I guess, so. All right.

MR. SMITH: Did he ever state to you his opinion on whether or not he should support those children?

MR. BLOCK: Your Honor, I am again going to object.

THE COURT: It wasn't his obligation to support those children, counsel. If you are trying to prove that when they first got married he was more friendly toward supporting those children than he was later, I suppose the Court would take that, but the Court knows that's human nature. As the thing wore on, I suppose it became more or less ominous to him, I don't know.

The result of the trial court's ruling that Lawrence had no obligation to support Bernice's children is that there is no factual record on which the trial court could have exercised its discretion in finding that Lawrence's support of Bernice's children was a proper factor to consider in altering the presumptive equal property division.[5] We will not infer from the record whether Lawrence stood *in loco parentis* to Bernice's children. Further testimony is necessary to enable the trial court to make that finding.[6]

---

[5] *Vier v. Vier*, 62 Wis.2d 636, 639, 215 N.W.2d 432, 433 (1974) gives the options open to this court when the trial court does not make a finding of facts:

"(1) Affirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions." (Citing *Walber v. Walber*, 40 Wis.2d 313, 319, 161 N.W.2d 898, 901 (1968).)

Therefore, we remand the case to the trial court to determine if Lawrence assumed the obligation to support Bernice's children. If the court finds that Lawrence stood *in loco parentis* to his stepchildren, then under the holding of *Turer*, 27 Wis.2d 196, the doctrine of gratuitous services would apply, and a credit for that support would be improper.

Appellant failed to include an appendix with her brief as required by Rule 809.19(2), Stats., and respondent has asked that we impose a penalty for noncompliance with this rule. We decline to do so.

*By the Court.*—Remanded with instructions.

---

[6] The burden of showing that a stepparent stands *in loco parentis* is heavy. The court in *Niesen*, 38 Wis.2d at 606, 157 N.W.2d at 664, stated:

[A] good Samaritan should not be saddled with the legal obligations of another and we think the law should not with alacrity conclude that a stepparent assumes parental relationships to a child.