XEROX CORPORATION, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent.†

Court of Appeals

*No. 82–1766. Submitted on briefs July 13, 1983.—Decided August 22, 1983.*

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the petitioner-appellant the cause was submitted on the briefs of *Terrence J. Byrne* of Wausau.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John C. Murphy,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. Xerox Corporation appeals from a judgment upholding the Wisconsin Tax Appeals Commission's decision affirming the 1977 personal property assessment by the Department of Revenue and the State Board of Assessors. Xerox contends that the Department incorrectly used the market data or sales approach

in making its assessment under sec. 70.34, Stats., instead of the income capitalization approach.[1] It also claims that the Department improperly used its list prices in determining the value of its personal property and should have used the discounted price given on some sales. We affirm because we conclude that the Department was correct in using the market data approach and in using Xerox's list prices to determine the property's value.

The facts are undisputed. Xerox owns office copy machines which are leased throughout Wisconsin. Customers usually prefer to lease the machines due to their rapid obsolescence and constant technical advances. As of May 1, 1977, approximately ninety-four percent of the machines in Wisconsin were leased and six percent had been sold. Some of these sales were made at discount prices or with credits given for previous leases.

The Department's market data approach to personal property tax assessment uses the commercial list prices set by Xerox and deducts an amount for depreciation from those prices. Using that method, the Department assessed Xerox's property at $13,759,600 as of May 1, 1977. The State Board of Assessors revised the assessment to $13,857,900. The Department used the market data approach because Xerox's sales had increased substantially during the assessment period and because it interpreted Wisconsin case law to require the market data approach whenever sales existed. The income capitalization approach used by Xerox establishes value by

---

[1] Section 70.34, Stats., states in pertinent part: "All articles of personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value . . ."

A description of the income capitalization approach to value, as applied to the operating property of a railroad, is found in *Soo Line Ry. Co. v. Department of Revenue*, 89 Wis. 2d 331–341, 342, 278 N.W.2d 487, 492–93 (Ct. App. 1979), *rev'd in part on other grounds*, 97 Wis. 2d 56, 292 N.W.2d 869 (1980).

determining what the average investor in rental property would pay for the income stream generated. Xerox determined that its machines had a value of $8,480,470 using that approach.

Xerox's manager of property tax operations testified that Xerox considered but rejected the market data approach because it determined that too few sales had been made for the sales price to be indicative of value. He stated that Xerox chose the income capitalization approach because it was producing machines primarily for a leasing market. A University of Wisconsin professor and independent appraiser specializing in income-producing property testified for Xerox that the market data approach was inappropriate because so few machines are sold and thus the list price is not indicative of value.

The Department's chief assessor testified that the Department decided to use the market data approach because of the substantial increase in Xerox's sales in Wisconsin. In prior years, Xerox's sales had been about two and one-half percent and they were six percent during the assessment period. He also stated that he felt bound by *Rosen v. City of Milwaukee*, 72 Wis. 2d 653, 242 N.W.2d 681 (1976), to use the market data approach since sales were made in Wisconsin during the assessment period.

The Commission found that Xerox always sold from the list price and unless a discount or credit were available, the list price was what a buyer would pay for a machine. Discounts and credits were not always available. Xerox refused to sell its machines at a price approximating the value established by the income capitalization approach. Although Xerox's witnesses testified generally that credits and discounts were available, they did not present evidence to show how many sales received the discounts, the amount of the discounts or how often the discounts were available and on what models and to which customers.

The Commission determined that the evidence before it supported the Department's use and application of the market data approach for assessing Xerox's property and concluded that the market data approach was the proper approach to use since sales of Xerox's machines existed in Wisconsin. The trial court upheld the Commission's decision after concluding that the evidence supported the Commission's findings and that its application of case law to the facts was correct.

We accord deference to an agency's application of the law to found facts when the agency has particular competence or expertise in the matter at hand. *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 48, 257 N.W.2d 855, 857 (1977). However, such deference is not required when this court is equally as competent as the agency to resolve the question of law involved. *Id.*

Construction of a statute is a question of law which we review independently on appeal. *Revenue Dept. v. Milwaukee Brewers,* 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983). Section 70.34, Stats., requires that assessments of personal property be made at "their true cash value." The issue in this case is not simply whether the Department used the proper method of assessing Xerox's property; it is whether the assessment reflected the property's "true cash value" under sec. 70.24. This court determines whether the assessment was made on the statutory basis because that inquiry involves a question of law. *State ex rel. Geipel v. Milwaukee,* 68 Wis. 2d 726, 732, 229 N.W.2d 585, 588 (1975).

## METHOD OF ASSESSMENT

Xerox contends that the market data or sales approach did not result in an assessment of its property's "true

cash value." It argues that because ninety-four percent of its machines are leased, the only assessment which will reflect "true cash value" is the income capitalization approach, not the market data or sales approach.

Although sec. 70.32, Stats., concerning real property, and sec. 70.34, concerning personal property, use different terminology, both require assessments on the basis of the property's fair market value. *State ex rel. Mitchell Aero. v. Bd. of Review,* 74 Wis. 2d 268, 277, 246 N.W.2d 521, 536 (1976). Fair market value has been repeatedly defined as "the amount [the property] will sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy." *Id.* (citation omitted). The assessor may consider all the factors which have a bearing on market value only when the fair market value cannot be established by sales. *State ex rel. Park Plaza S.C. v. Bd. of Rev.,* 61 Wis. 2d 469, 473–74, 213 N.W.2d 27, 29 (1973).

The Department's chief assessor stated that he used the market data approach for the assessment because there were sales in Wisconsin during the assessment period and because those sales had increased during the assessment period. He testified that he understood Wisconsin case law, especially *Rosen, supra,* to require the market data approach when sales existed for the property being assessed.

Xerox argues that the income capitalization approach has been used in Wisconsin previously and that it is the only proper method for assessment in this case. *See Park Plaza,* 61 Wis. 2d at 475, 213 N.W.2d at 31. However, the *Park Plaza* court noted that only after the assessor determined that there were no recent sales of the property under assessment and no comparable sales by which to determine fair market value was the income capitaliza-

tion method proper. In *State ex rel. I.B.M. Corp. v. Board of Review*, 231 Wis. 303, 314, 285 N.W. 784, 789 (1939), the court held that a hypothetical method for determining property's value (such as income capitalization) was necessary in that case only because I.B.M.'s property had never been sold in the United States and no sales of comparable property existed.

In this case, sales have occurred. Six percent of Xerox's machines were sold during the assessment period. Under these circumstances, a proper method of valuation was the market data approach, not the hypothetical income capitalization approach which has only been utilized when *no* sales exist for the property in question.

The Commission correctly determined that the Department had properly assessed Xerox's personal property under sec. 70.34, Stats. The trial court did not err in affirming the Commission's decision.

## LIST PRICES

Xerox argues that the Department was incorrect in using its published list prices to determine the value of its machines. It contends that sales are usually obtained only after substantial credits and discounts are applied and that the assessment should reflect these discounts and credits.

The assessor's valuation is presumed to be correct. *Rosen*, 72 Wis. 2d at 661, 242 N.W.2d at 684. The taxpayer has the burden of presenting evidence to overcome this burden. *Id.* at 662, 242 N.W.2d at 684. Its evidence must compel the conclusion that the assessor's valuation was incorrect. *Mitchell*, 79 Wis. 2d at 283, 246 N.W.2d at 528.

Xerox presented general evidence that many of its sales were in combination with discount and rental credits for prior customers. It stated that about 40% of sales were at discounted prices. However, no evidence was presented to show the amount of the discount, the number of sales actually receiving the discount, the availability of the discount in terms of frequency, which models and customers were eligible for the discounts or any other specific information concerning the discounts and credits. The Commission correctly concluded that Xerox did not meet its burden to show that the Department's use of its list prices was incorrect and presented no evidence of what it considered the valid sales prices to be. The trial court therefore correctly affirmed the Commission's decision.

*By the Court.*—Judgment affirmed.

