Nestlé USA, Inc., Petitioner-Appellant,†

v.

Wisconsin Department of Revenue, Respondent-Respondent.

Court of Appeals

*No. 2008AP322. Submitted on briefs October 8, 2008.
—Decided October 8, 2009.*

## 2009 WI App 159

(Also reported in 776 N.W.2d 589.)

† Petition to Review granted 3/9/10.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert L. Gordon* of *Michael Best & Friedrich LLP*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *F. Thomas Creeron III*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

A nonparty brief was filed by *Robert Horowitz* of *Stafford Rosenbaum LLP*, Madison, and *Stephen C. Nick*, city attorney, Eau Claire.

Before Dykman, P.J., Higginbotham and Bridge, JJ.

¶ 1. HIGGINBOTHAM, J. This is a property tax case. Nestlé USA, Inc. appeals a circuit court order affirming a decision and order of the Wisconsin Tax Appeals Commission upholding the Wisconsin Department of Revenue's (DOR) valuation for tax years 2003 and 2004 of improvements to Nestlé's Gateway Plant, a facility that manufactures powdered infant formula. Nestlé argues that the DOR erred by failing to apply the comparable sales approach in valuating the property, contrary to WIS. STAT. § 70.32(1) (2007-08),[1] and by making the assessment based on the property's intrinsic worth to Nestlé and not its market value, contrary to *State ex rel. Northwestern Mutual Life Insurance Co. v. Weiher*, 177 Wis. 445, 188 N.W. 598 (1922). Nestlé also argues that DOR's application of the cost approach in valuating the property was erroneous because it did not include reductions for functional obsolescence. We reject these arguments and conclude that the DOR's assessment upheld by the Commission was based on the proper interpretation and application of § 70.32(1). We

---

[1] All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.

therefore affirm the circuit court's order upholding the Commission's decision.[2]

## I. *Procedural History*

¶ 2. In 2003, the DOR assessed the value of Nestlé's Gateway Plant in Eau Claire at $10,915,000; $1,335,100 in land and $9,579,900 in improvements. In 2004, DOR issued an assessment in the same amount. Nestlé challenged the 2003 and 2004 assessments with the State Board of Assessors, citing its own appraiser's assessment, which valued the property at $3,430,000 under one assessment methodology and $3,590,000 under another methodology. The Board affirmed the 2003 and 2004 assessments, and Nestlé petitioned the Commission for review of the Board's decision.

¶ 3. On review, the Commission concluded that Nestlé had rebutted the presumption of correctness associated with the assessment of the land, and assessed its value at $1,140,000. However, the Commission concluded that Nestlé had failed to rebut the presumption of correctness with regard to the Gateway Plant improvements, upholding the DOR's improvement assessment of $9,579,900. The Commission's decision was based on its interpretation and application of WIS. STAT. § 70.32(1) and portions of the Wisconsin Property Assessment Manual adopted pursuant to § 70.32(1).

¶ 4. Nestlé sought certiorari review in the circuit court for that part of the Commission's decision that affirmed the DOR's assessment of the improvements.[3]

---

[2] The City of Eau Claire filed an amicus brief in this case following our order granting its request to do so.

[3] Nestlé did not in the circuit court, nor does it here, request review of the valuation of the land.

The circuit court affirmed the Commission, and this appeal followed.

## II. *Standard of Review*

¶ 5. In an appeal of a certiorari review of a decision of the Tax Appeals Commission, we review the Commission's decision and order, not the circuit court's. *See DOR v. Menasha Corp.*, 2008 WI 88, ¶ 46, 311 Wis. 2d 579, 754 N.W.2d 95. We will uphold an agency's findings of fact if they are supported by substantial and credible evidence. *Jarrett v. LIRC*, 2000 WI App 46, ¶ 11, 233 Wis. 2d 174, 607 N.W.2d 326. "The burden is less than the preponderance of the evidence in that any reasonable view of the evidence is sufficient." *Id.*

¶ 6. This case requires us to review the Commission's interpretation of Wis. Stat. § 70.32(1). We are not bound by an administrative agency's decision. *Chippewa County Dep't of Human Servs. v. Bush*, 207 WI App 184, ¶ 7, 305 Wis. 2d 181, 738 N.W.2d 562. Statutory interpretation is a question of law subject to de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). Statutory interpretation begins with the statute's text; we give the text its common, ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. In construing a statute we are to give

164

deference to the policy choices made by the legislature in enacting the law. *Id.*, ¶ 44. We also consider the scope, context and structure of the statute itself. *Id.*, ¶¶ 46, 48. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46.

██ ██

¶ 7. Nonetheless, we generally accord varying degrees of deference to an administrative agency's construction of a statute to correspond with the agency's expertise and with the legislature's charge to that agency to administer the statute. *See Racine Harley-Davidson, Inc. v. State*, 2006 WI 86, ¶ 14, 292 Wis. 2d 549, 717 N.W.2d 184. There are three levels of deference courts accord an administrative agency's decision: great weight, due weight and no weight. *See State v. Schwarz*, 2005 WI 34, ¶ 15, 279 Wis. 2d 223, 693 N.W.2d 703.

¶ 8. The parties disagree over the appropriate level of deference we should accord the Commission's interpretation and application of Wis. Stat. § 70.32(1). Nestlé maintains that the Commission's interpretation of § 70.32(1) is entitled to no deference because this court has determined this statute to be unambiguous in *City of West Bend v. Continental IV Fund Limited Partnership*, 193 Wis. 2d 481, 490, 535 N.W.2d 24 (Ct. App. 1995), and, Nestlé argues, an interpretation of an unambiguous statute is reviewed de novo. The DOR argues that the Commission's decision should be accorded great weight deference because it is charged with applying the statute at issue and has developed an expertise in interpreting it.

¶ 9. However, we need not decide which level of deference is appropriate because, under any level of deference, we conclude that the Commission reasonably interpreted and applied Wis. Stat. § 70.32(1), and that Nestlé's interpretation is unreasonable.

¶ 10. Below we summarize the Commission's factual findings, including its descriptions of the competing assessments offered by the parties' appraisers. We then set forth the applicable law, and summarize the Commission's analysis. Finally, we analyze the parties' arguments and their interpretations of the relevant law and conclude, applying a de novo review, that the Tax Appeals Commission's interpretation and application of Wis. Stat. § 70.32(1) is reasonable and appropriate and that Nestlé's interpretation is unreasonable.

## III. The Commission's Findings of Fact

### a. The Gateway Plant

¶ 11. In 2001, Nestlé built the Gateway Plant, a satellite facility to its main plant in Eau Claire. The Gateway Plant is a special purpose facility devoted to the production of whole protein powdered infant formula. It was specially designed to meet strict Food and Drug Administration (FDA) regulations pertaining to the production of powdered infant formula. The plant includes the following features not typical of other food processing plants: an unusually large spray dryer (110 feet high) housed in a 122 foot high spray dry tower;[4] ultra-sensitive processing areas where surfaces have been specially treated to limit microbial growth; reverse osmosis treatment equipment designed to remove impurities from the city water; a waste water treatment facility which lowers the pH of the waste before discharge; and a fire pump house necessitated by the height of the spray dryer. These features added signifi-

___

[4] The Commission's decision explains that a spray dryer is "typically used to create a homogeneous blend in powdered form of substances that would normally separate (e.g., oils, proteins, and sugars)."

cant costs to the construction of the plant. The Gateway Plant had been well-maintained and was in good condition as of the assessment dates.

### b. DOR's appraisal

¶ 12. The DOR's appraiser was Curt Stepanek ("DOR's appraiser"), a Property Assessment Specialist—Advanced employed by the agency. The DOR's appraiser determined that the Gateway Plant's highest and best use was as a powdered infant formula plant. Central to the dispute in this case is the Commission's Finding No. 26, which addresses the Gateway Plant's marketability for continued use as a powdered infant formula plant:

> [DOR's] appraiser testified that a likely purchaser of the Gateway Plant would be another powdered infant formula manufacturer. Even though there are other powdered infant formula manufacturers in the United States, neither party could find any instance in the United States where a powdered infant formula manufacturing plant was sold for continued use as a powdered infant formula manufacturing plant . . . .

¶ 13. The DOR's appraiser considered using the comparable sales approach in assessing the plant—a determination of value based on sales of other "reasonably comparable" properties, *see Adams Outdoor Advertising Ltd. v. City of Madison*, 2006 WI 104, ¶ 34, 294 Wis. 2d 441, 717 N.W.2d 803—but settled on the cost approach, a methodology which values improvements in light of the cost of building a replacement structure.[5] *See Walgreen Co. v. City of Madison*, 2008 WI 80, ¶ 23,

---

[5] Assessors use three basic approaches to property valuation: the comparable sales approach, the cost approach and the income approach. *ABKA Ltd. P'ship v. Board of Review of the Village of Fontana-on-Geneva-Lake*, 231 Wis. 2d 328, 352, 603

311 Wis. 2d 158, 752 N.W.2d 687. The DOR appraiser rejected the comparable sales approach after examining sales of other, less-specialized food processing plants. He concluded that these plants were not "reasonably comparable" to the Gateway Plant because they lacked the special features built into Nestlé's plant needed to meet FDA regulations for the production of powdered infant formula. He further concluded that, due to the Gateway Plant's special features, conversion of the plant to a general food processing facility would not be "financially feasible" without "enormous capital investment."

¶ 14. As noted, the DOR's appraiser assessed the improvements to the Gateway Plant at $9,579,900. Because the plant was new and operated specifically for its purpose of manufacturing powdered infant formula, the DOR appraiser did not reduce the assessments for any functional obsolescence. He also did not reduce the assessments for economic obsolescence.

¶ 15. The Commission found that there were "other manufacturers of powdered infant formula in the United States that could be potential purchasers of the Gateway Plant."

### c. Nestlé's appraisals

¶ 16. Nestlé's appraiser was S. Steven Vitale ("Nestlé's appraiser"). He assessed the Gateway Plant under the comparable sales approach, and rendered a secondary appraisal under the cost approach.

N.W.2d 217 (1999). These approaches are not interchangeable with the three-tiered assessment system discussed later in this opinion. The cost and income approaches are two different methods of assessment under tier three, while the comparable sales approach is the method used in tier two. See infra, ¶¶ 24–25.

### *i. Comparable sales approach*

¶ 17. Nestlé's appraiser's analysis under the comparable sales approach began with his determination that, if the Gateway Plant were sold, it would be unlikely to see continued use as a powdered infant formula facility, given the limited number of powdered infant formula manufacturers.[6] The appraiser thus concluded that the plant's highest and best use needed to be expanded to include other functional uses, including other food or light manufacturing processes. The Commission found, however, that Nestlé's appraiser "did not show any sales of powdered infant formula plants that had been sold for other uses."

¶ 18. Under this expanded definition of highest and best use, Nestlé's appraisal referenced seven comparable sales of food processing plants in Wisconsin. The prices of these sales ranged from a low of $35.75 per square foot for a potato processing plant in Plover to a high of $84.71 per square foot for a fluid milk processing plant in Richland Center. After comparing the seven comparable sales, Nestlé's appraiser valued the Gateway Plant at approximately $42.18 per square foot of total building area, or $70.80 per square foot of primary ground floor area. The appraiser valued the plant at $3,590,000 under this approach.

¶ 19. The Commission found that none of the comparable sales used by Nestlé's appraiser

---

[6] Nestlé's appraiser testified that while there were other powdered infant formula manufacturers in the United States, Nestlé was the only such manufacturer in Wisconsin. The Commission found that there were "other manufacturers of powdered infant formula in the United States" in addition to Nestlé, but did not specify how many such manufacturers are in existence.

were of plants that were capable of producing powdered infant formula. None of the sales included a large tower containing a spray dryer. None of the sales were plants that were constructed with special features and finishes to comply with FDA regulations for the production of powdered infant formula or other pharmaceutical products.

### ii. Cost approach

¶ 20. Nestlé's appraiser made his assessment under the cost approach by estimating the cost of the reproducing or replacing the improvements; subtracting depreciation from physical deterioration, functional obsolescence, and economic obsolescence; and adding the value of the land. He put the replacement cost of the improvements at approximately $17.2 million, then reduced this figure by 4.44% for physical deterioration. From this new figure, he then subtracted approximately $13.9 million—or over 80% of the value—for functional obsolescence, and took an additional 10% off for economic obsolescence.[7] The approach yielded a total assessment of $3,430,000 for the improvements and the land.

¶ 21. Nestlé's appraiser determined that all of the special features of the plant unique to its use as a powdered infant formula plant were functionally obsolete, and reduced the assessment accordingly. These special features included: special concrete construction, special interior wall and floor finishes, a water

---

[7] Nestlé does not argue on appeal that the DOR's assessment should have included a reduction for economic obsolescence; it argues only that the assessment should have included a reduction for functional obsolescence. We therefore consider any claim that DOR erred in failing to reduce the assessment for economic obsolescence to be abandoned.

treatment building, a fire pump house building, a liquid propane vaporizer and the design/layout of the plant. He testified that these features would not be marketable for sale of the Gateway Plant as a general food processing plant.

¶ 22. The Commission defined economic obsolescence as "the impairment of desirability or useful life from factors external to the property such as economic forces in the market." Nestlé's appraiser based its economic obsolescence estimate on a cursory review of depreciated improvement costs for manufacturing facilities and recent sales of manufacturing facilities in the area.

## IV. Property Assessment Law

¶ 23. WISCONSIN STAT. § 70.32(1) governs the valuation of real property for tax purposes. It provides in part:

> [r]eal property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03 (2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

"Full value" as used in this statute means "fair market value" or "the amount [the property] will sell for upon

arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy." *Metropolitan Holding Co. v. Board of Review of the City of Milwaukee*, 173 Wis. 2d 626, 631, 495 N.W.2d 314 (1993) (citation omitted).

■

¶ 24. A property's full value "must reflect its highest and best use." *Forest County Potawatomi Cmty. v. Township of Lincoln*, 2008 WI App 156, ¶ 10, 314 Wis. 2d 363, 761 N.W.2d 31. The PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS prepared by DOR states that the highest and best use of a property must be legal, in balance with surrounding properties and financially feasible. 1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS 7–9 (Dec. 2004).

■

¶ 25. The ASSESSMENT MANUAL and case law set forth a three-tier system for determining the fair market value of property. *Allright Properties, Inc.*, 2009 WI App 46, ¶ 20, 317 Wis. 2d 228, 767 N.W.2d 567. "A recent arm's-length sale of the property is the best evidence of value," and is the basis for an assessment under tier one. *See Forest County Potawatomi*, 314 Wis. 2d 363, ¶ 10. "If there has been no recent sale . . . an assessor must consider sales of reasonably comparable properties," which is the tier two approach. *Adams Outdoor Adver.*, 294 Wis. 2d 441, ¶ 34. In the absence of comparable sales data, the assessor determines the value under tier three, which permits consideration of "all the factors collectively which have a bearing on value of the property in order to determine its fair market value." *State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 686, 173 N.W.2d 627 (1970). "Only if there has been no arms-length sale and there

are no reasonably comparable sales may an assessor use" an assessment methodology under tier three. *Adams Outdoor Adver.*, 294 Wis. 2d 441, ¶ 34.

¶ 26. One particular tier three methodology is the "cost approach." *See id.* With this approach, the assessor determines the property value using the following procedure: (1) estimate the land value; (2) estimate the cost of reproducing or replacing the structure; (3) estimate the accrued depreciation; (4) subtract the accrued depreciation from the estimated reproduction or replacement cost; and (5) add the present value of the improvements to the estimated land value for the total property value. 1 ASSESSMENT MANUAL at 7–22. "The cost approach is based on the principle of substitution. That is, that a well-informed buyer will pay no more for a property than the cost of constructing an equally desirable substitute property with like utility." *Id.*

¶ 27. An assessor's valuation is presumed to be correct. WIS. STAT. § 70.47(8)(i). This presumption "may be rebutted by a sufficient showing by the objector that the valuation is incorrect." *Id.* Each part of the DOR's valuations is presumed to be correct, even if other parts have been successfully rebutted. *See Xerox Corp. v. DOR*, 114 Wis. 2d 522, 528, 339 N.W.2d 357 (Ct. App. 1983).

### *V. Commission's Opinion*

¶ 28. As noted, the Commission concluded that Nestlé had rebutted the presumption of correctness associated with the assessment of the land, reducing the land assessment to $1,140,000, but concluded that Nestlé failed to rebut the presumption of correctness associated with the Gateway Plant improvements, up-

holding the DOR's improvement assessment of $9,579,900. Neither party challenges the Commission's decision regarding the assessment of the land. Accordingly, this case concerns only the Commission's valuation of the improvements.

¶ 29. The Commission's decision began by addressing whether, like Nestlé's appraiser, DOR's appraiser should have employed the second-tier comparable sales approach in assessing the improvements. Within the context of considering the property's highest and best use, the Commission observed that the Gateway Plant was a special purpose property designed and operated as a powdered infant formula plant. Nestlé argued to the Commission that the highest and best use of the plant must be expanded to include general food processing plants because there was no known instance of a powdered formula plant being sold for continued use as a powdered formula plant. The Commission disagreed, concluding that the general food processing plants cited by Nestlé's appraiser were not "reasonably comparable" to the Gateway Plant, and thus the comparable sales approach was inappropriate. Construing WIS. STAT. § 70.32(1), the Commission concluded that, where there are insufficient sales of reasonably comparable property, an analysis of fair market value must examine data derived from other appraisal approaches, including the cost approach.

¶ 30. The Commission compared the cost approach valuations of the parties' appraisers, and noted the primary difference between the two was the 80% deduction in value for functional obsolescence taken by Nestlé's appraiser. The Commission concluded that Nestlé had failed to demonstrate that the specialized features of the powdered infant formula were "functionally obsolete" within the meaning of the ASSESSMENT

174

MANUAL.[8] The Commission expressed the view that Nestlé's large deduction for functional obsolescence was based on the company's position, already rejected by the Commission, that the property's highest and best use was as a general food processing plant. Rejecting Nestlé's valuation using the comparable sales approach, and its alternative valuation under the cost approach, the Commission thus concluded that Nestlé had failed to rebut the presumption that the DOR's appraisal of the improvements was correct.

## VI. *Discussion*

¶ 31.　Nestlé contends that, to assess the Gateway Plant's fair market value consistent with WIS. STAT. § 70.32(1), the Commission should have expanded its definition of the property's highest and best use to include its operation as a general food processing plant, and assessed the property under the comparable sales approach. Nestlé further argues that the Commission's assessment reflected the intrinsic value of the property to its owner, and not its value on the open market, contrary to *State ex rel. Northwestern Mutual Life Insurance Company v. Weiher*, 177 Wis. 445, 188 N.W. 598 (1922). Alternatively, Nestlé argues that, if the Commission did not err in assessing the property under the cost approach, its application of the cost approach was based on an erroneous interpretation of WIS. STAT. § 70.32(1). We address these arguments in turn.

---

[8] The Assessment Manual defines functional obsolescence as "loss in value, due to a lack of or excessive utility. Functional obsolescence occurs over time because of changing needs, technology, design, promotion/marketing, and cost/construction." 1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS, p. 7–23 (Dec. 2004).

### a. Whether the comparable sales approach applies

¶ 32. Nestlé's contention that the Commission should have expanded its definition of highest and best use depends, in part, on its assertion that the Commission made a finding of fact that there was no market for the property as a powdered infant formula plant. Nestlé points to Finding No. 26, which states that "neither party could find any instance in the United States where a powdered infant formula manufacturing plant was sold for continued use as a powdered infant formula manufacturing plant." Nestlé argues that, because property is assessed at its value in the marketplace, *Metropolitan Holding Co.*, 173 Wis. 2d at 631, and thus a property cannot be assessed based on a use for which there is no market, the Gateway Plant's highest and best use must be expanded to include a use for which a market exists, such as a general food processing plant.

¶ 33. DOR and amicus City of Eau Claire argue that neither Finding 26 nor any other part of the Commission's decision represents a determination that "no market" existed for the property's continued use as a powdered infant formula plant. We agree. The Commission found that there were no known sales of powdered infant formula plants, whether for that continued specialized use or for conversion to a general food processing or light manufacturing use. This merely suggests that such plants are rarely bought and sold. It does not necessarily indicate that Nestlé would be unable to find a buyer who intended to maintain the property as a powdered infant formula plant. To the contrary, the Commission reasonably found that there were other powdered infant formula manufacturers in the United States, and noted the testimony of DOR's appraiser that

176

one of these manufacturers would be "a likely purchaser of the Gateway Plant."

¶ 34. At any rate, Nestlé had the burden of proving the absence of a market for the property as a powdered infant formula plant, *see Xerox Corp. v. DOR*, 114 Wis. 2d at 528, and we conclude that it failed to carry its burden. Its appraiser did not perform a market analysis concerning the existence of potential investors or purchasers of the facility, and even stopped short of declaring that there was "no market" for the property as a powdered infant formula plant, stating only that the market for this specialized use was a "limited market."

¶ 35. Absent sufficient proof that no market existed for the property as a powdered infant formula plant, we conclude that an assessment under the comparable sales approach based on an expanded definition of highest and best use would be contrary to WIS. STAT. § 70.32(1). As noted, the supreme court in *Markarian* construed § 70.32(1) to establish a three-tiered assessment system. Under this system, when there are no sales of the property itself or reasonably comparable properties and thus an assessment cannot be made under a tier-one or tier-two methodology, the assessment is made using a tier-three methodology, such as the cost approach. *Adams Outdoor Adver.*, 294 Wis. 2d 441, ¶¶ 34–35.

¶ 36. Here, it is undisputed that there were no recent sales of the property itself. The disputed issue is whether there were recent sales of "reasonably comparable" properties within the meaning of WIS. STAT. § 70.32(1). Based on the facts before it, the Commission concluded, and we agree, that the property's highest and best use is as a powdered infant formula plant because this was the property's current use and the

property was outfitted for this specific use in a costly 2001 construction project. A property's highest and best use must be legally permissible, in balance with other properties around it, and "should produce the greatest net return over a reasonable time period." 1 ASSESSMENT MANUAL at 7–9. We agree with the Commission that conversion of the plant to a general food processing use would not yield the greatest return for Nestlé in light of the recent investments made to equip the plant for the manufacture of powdered infant formula.

¶ 37. Given that the property's highest and best use is its current use as a powdered infant formula plant, we agree with the Commission that the general food processing plants cited by Nestlé's appraiser as comparable sales were not "reasonably comparable" to the property under assessment. Because there were no recent sales of properties reasonably comparable to the Gateway Plant, an assessment under the tier-two comparable sales approach would have been contrary to WIS. STAT. § 70.32(1).

¶ 38. Simply put, Nestlé's approach would permit a second kick at the comparable sales can by broadening the pool of comparable sales whenever the first kick yields insufficient data. Under such an approach, we would expect to see a two-tier system authorizing assessments based on only (1) recent sales of the property itself or (2) recent sales of comparable properties. But WIS. STAT. § 70.32(1) and cases construing the statute authorize a third set of assessment methodologies, the validity of which are well-established. Section 70.32(1) authorizes valuations based on sales of the property and comparable properties "*and all factors that,* according to professionally acceptable appraisal practices, *affect the value of the property to be assessed.*" (Emphasis added.) The ASSESSMENT MANUAL explicitly recognizes that the cost approach is favored when there

178

are insufficient comparable sales: "[A]ppraisers typically use the sales comparison approach in markets where adequate sales exist. They typically use the cost approach in cases of new or special purpose structures or where limited sales . . . data activity exist." 1 Assessment Manual at 7–18. Even Nestlé's own appraiser agreed with the following statement from a trade journal explaining that the cost approach is the preferred method of valuation when, as here, the property has a highly specialized use:

> It is generally recognized that conventional valuation techniques of sales comparison and income approaches are usually not applicable in . . . instances [of specialized assets] because of comparable data limitations. When data does not exist, physical disparities are often dramatic and would require adjustments of such magnitude that the value indications would be meaningless. Consequently, the cost approach is usually considered the only valid approach to value.

David Paul Rothermich, "Special-Design Properties: Identifying the 'Market' in Market Value," THE APPRAISER JOURNAL, Oct. 1998 at 410.

¶ 39. Given the specialized nature of the Gateway Plant improvements and the lack of comparable sales data, we conclude that the DOR's use of the cost approach was appropriate in this case and consistent with WIS. STAT. § 70.32(1). We agree with the Commission that Nestlé's interpretation of § 70.32(1), which would essentially require proof of an active market for a property's current use, "would lead to absurd undervaluations." As the Commission explained: "It does not make any sense to conclude that a new, modern, manufacturing facility is worth considerably less than represented by its replacement cost premised on its continued use simply because these types of plants are rarely bought and sold."

179

¶ 40. Nestlé objects that the DOR's assessment was contrary to the rule set forth in *Northwestern Mutual* that property is assessed according to its value on the open market, not by its intrinsic value to the current owner. However, *Northwestern Mutual* is readily distinguishable. There, it was undisputed that the property, a building housing Northwestern Mutual's offices containing many features useful to the company but not to any prospective buyer, "would have to be sold for a use or purpose for which it was not built." *Northwestern Mut.*, 177 Wis. at 447. Here, as noted, whether Nestlé could find a buyer for the Gateway Plant for its continued use as a powdered infant formula plant is in dispute, and Nestlé has failed to meet its burden to prove the lack of a market for this use. Moreover, the Commission found that there were other powdered infant formula manufacturers in the United States, and cited the assessor's testimony that one of these manufacturers would be the "likely purchaser" of the Gateway Plant.

¶ 41. For the foregoing reasons, we conclude that the Commission's rejection of the comparable sales approach in reviewing the DOR's assessment of the improvements to the property was based on a reasonable and correct interpretation of WIS. STAT. § 70.32(1), and that Nestlé's argument that the comparable sales approach applies here is based on an unreasonable interpretation of § 70.32(1).

### b. Whether application of the cost approach requires a reduction in the assessment for functional obsolescence

¶ 42. Alternatively, Nestlé argues that, if the Commission did not err by rejecting the comparable

sales approach in reviewing the assessment, its application of the cost approach overvalued the property by failing to reduce the assessment for functional obsolescence. Nestlé's appraiser determined that all special features used to manufacture powdered infant formula were functionally obsolete, and reduced the total assessment by 80% accordingly. For the reasons that follow, we conclude that the DOR appraiser's decision not to reduce the assessment for functional obsolescence was consistent with Wis. Stat. § 70.32(1).

¶ 43. As noted, the cost approach to assessment is based on the principle of substitution. *Walgreen Co.*, 311 Wis. 2d 158, ¶ 23 (*citing* 1 Assessment Manual at 7–19, 7–23). The value of improvements is determined under the cost approach by calculating the cost of reproduction or replacement minus depreciation. *Id.* An assessor applying the cost approach may reduce the assessment for functional obsolescence, which is defined as "the loss in value, due to a lack of or excessive utility" which "occurs over time because of changing needs, technology, design, promotion/marketing, and cost/construction." 1 Assessment Manual at 7–23.

¶ 44. Nestlé argues that the specialized improvements that make the plant suitable for the production of powdered infant formula are over-improvements that result in excessive utility, and are therefore functionally obsolete. However, this argument is premised on the assumption, which we have already rejected, that there is no market for the property's continued use as a powdered infant formula plant. Moreover, we agree with DOR and the Commission that the special features of the plant—which were relatively new and expensive, were required by FDA regulations pertaining to the manufacture of powdered infant formula, and were in

181

use at the time of the assessments—are not functionally obsolete. Accordingly, we conclude that the DOR appraiser properly declined to reduce the assessment for functional obsolescence.

## CONCLUSION

¶ 45. In sum, we conclude that the DOR's assessment of the property using the tier-three cost approach was based on a reasonable and correct interpretation and application of WIS. STAT. § 70.32(1) because there were no recent sales of the property itself or of reasonably comparable properties on which an assessment could have been made using a tier-one or tier-two assessment methodology. We further conclude that the DOR's assessment was based on a determination of its market value using accepted assessment techniques and not on its intrinsic value to Nestlé, consistent with *Northwestern Mutual*. Finally, we conclude that the DOR correctly declined to reduce its assessment for functional obsolescence in assessing the property under the cost approach. We therefore affirm the circuit court's order upholding the Commission's decision upholding DOR's assessment.

*By the Court.*—Judgment affirmed.